813 A.2d 747

PRUDENTIAL PROPERTY AND CASUALTY
INSURANCE COMPANY, Appellee,

v.

Adam COLBERT, Gary Colbert, Christine Colbert, Appellants.

Supreme Court of Pennsylvania.

Submitted April 19, 2001.

Decided Dec. 31, 2002.

Kenneth G. Fawcett, James Joseph Ross, for Colbert, A., et al.

Matthew Stephen Crosby, Scott B. Cooper, Harrisburg, amicus curiae, for Pennsylvania Trial Lawyers Association.

Peter B. Skeel, for Prudential Property and Casualty Insurance Company.

James C. Haggerty, Pittsburgh, amicus curiae, for Pennsylvania Defense Institute, Nationwide Mutual Insurance Company, Insurance Federation of Pennsylvania.

Before ZAPPALA, C.J., CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, JJ.

## *OPINION*

Chief Justice ZAPPALA.

This matter comes before this Court on a Petition for Certification of Questions of Law from the United States Court of Appeals for the Third Circuit.[1]  We granted the Petition, which certifies two distinct questions for our review: (1) whether the definition of "insured" in the automobile

1. We held our decision in this case pending *Burstein v. Prudential Property and Casualty Insurance Co.,* 809 A.2d 204 (Pa.2002), *reversing Burstein v. Prudential Property and Casualty Insurance Co.,* 742 A.2d 684 (Pa.Super.1999) (plurality opinion), as the parties had provided extensive argument concerning the effect of the Superior Court's decision in *Burstein.*

insurance policy of Prudential Property and Casualty Insurance Company impermissibly narrows and conflicts with the statutory definition of "insured" as contained in Section 1702 of Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1799.7; and (2) whether the "other household vehicle" exclusion contained in the Prudential policy is void as against the public policy of the MVFRL.

On August 26, 1996, Adam Colbert was involved in an automobile accident while driving his car, which he had insured with both uninsured (UM) and underinsured (UIM) motorist coverage under a policy with State Farm Insurance Company. At the time of the accident, Adam resided with his parents, Gary and Christine Colbert, who owned three automobiles, all of which were insured with both UM and UIM coverage under a single policy with Prudential. The Prudential policy did not cover Adam's vehicle in any respect; indeed, as discussed *infra*, it was expressly excluded from coverage.

Adam Colbert ultimately settled his claim against the driver who caused the accident and received the maximum amount under the tortfeasor's liability coverage. In addition, Adam recovered the maximum amount of UIM coverage recoverable under his policy with State Farm. Adam then made another claim for additional UIM benefits under his parents' policy with Prudential. Prudential denied coverage on two separate grounds: (1) Adam was not an "insured" under the Prudential policy; and (2) the Prudential policy, in its "other household vehicle" exclusion, expressly excluded coverage of a named insured or household resident for accidents occurring while the insured or household resident was using another owned vehicle not insured under the Prudential policy.

Prudential filed a declaratory judgment action against Adam and his parents in the United States District Court for the Western District of Pennsylvania. The parties filed cross-motions for summary judgment. On October 12, 1998, the district court granted Prudential's motion and denied the Colberts' motion, finding that Adam was not an "insured" under the terms of the Prudential policy and that Adam was excluded from coverage by the "other household vehicle"

exclusion. *See* R. 6a–18a. The Colberts appealed to the United States Court of Appeals for the Third Circuit, which certified the above-referenced questions of Pennsylvania law to this Court.

The first question certified for our review is whether the definition of "insured" in Prudential's automobile insurance policy with Gary and Christine Colbert impermissibly narrows and conflicts with the statutory definition of "insured" as set forth in the MVFRL. Section 1702 of the MVFRL defines an "insured" as:

**"Insured."** Any of the following:

(1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.

(2) If residing in the household of the named insured:

(i) a spouse or other relative of the named insured; or

(ii) a minor in the custody of either the named insured or relative of the named insured.

75 Pa.C.S. § 1702. Adam Colbert was not a named insured on the Prudential policy. Nonetheless, it is undisputed that he falls within the second, more broad definition of insured: he resided in the household of his parents, the named insureds, at the time of the accident.

Adam Colbert does not, however, satisfy Prudential's narrower definition of "insured," which requires that resident relatives be driving an automobile insured under the Prudential policy at the time of the accident:

**WHO IS INSURED**

**IN YOUR CAR (INCLUDES A SUBSTITUTE CAR)**

You and a resident relative are insured while using your car or a substitute car covered under this part.

Other people are insured while using your car or a substitute car covered under this part if you give them permission to use it. They must use the car in the way you intended.

R. 127a (emphasis omitted). Thus, Adam Colbert could only qualify as an insured under the Prudential policy if he was driving a car covered by the Prudential policy, or a substitute

car. Adam, however, was driving his car, which was not covered by the Prudential policy and did not qualify as a substitute car.[2] Thus, under the terms of the Prudential policy, Adam was not an "insured" during the accident.

■ Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy. *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006, 1008 (1998) (citing *Antanovich v. Allstate Ins. Co.*, 507 Pa. 68, 488 A.2d 571, 575 (1985)). The plain language of the definition of "insured" within the Prudential policy clearly and unambiguously disqualifies Adam Colbert as an "insured," as he was driving his car during the accident. The Colberts, however, argue that "[w]here, as here, the legislature has been unequivocal in providing certain classes of individuals with the status of 'insured', any contractual efforts to alter that status must be viewed as contrary to law." Appellants' Br. at 16. In support of their argument, the Colberts rely on the Superior Court's *en banc* decision in *Allwein v. Donegal Mutual Insurance Co.*, 448 Pa.Super. 364, 671 A.2d 744 (1996). In *Allwein*, the automobile insurance policy under consideration provided "gap underinsurance" coverage, under which a tortfeasor's vehicle was not considered "underinsured" if the tortfeasor's liability limits were greater than or equal to the insured's UIM benefits.

The Superior Court held that the policy's "gap underinsurance" provision violated the MVFRL. Specifically, the court considered that the MVFRL defines underinsured coverage in terms of the damages sustained by the plaintiff. *Id.* at 748–49. Section 1702 of the MVFRL defines an "underinsured motor vehicle" as: "A motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.C.S. § 1702. The policy, on the other hand, determined its UIM coverage based on the

---

**2.** The policy's definition of "substitute car" specifically states that: "This car cannot be owned by you or a household resident." R. 126a (emphasis omitted). As Adam, a household resident, owned his vehicle, it cannot qualify as a "substitute car" under the Prudential policy.

defendant's liability coverage. In operation, "the victim of a negligent driver whose liability insurance is not adequate to indemnify the victim for losses and damages would receive *no* underinsurance from his or her own policy if the tortfeasor's liability insurance were greater than or equal to the victim's underinsurance benefit." *Allwein,* 671 A.2d at 747 (emphasis in original). The court reasoned that insurance contract provisions cannot conflict with statutory requirements:

> As a general rule, stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws. George J. Couch, Couch on Insurance 2d (Rev.ed) § 13.7 at 827 (1984). While we agree with appellant that "[n]either the courts nor the board of arbitration have a license to rewrite a contract," (Appellant's brief at 3), we also agree with Couch, *supra,* that insurers do not have a license to rewrite statutes.

*Id.* at 752; *see also Miller v. Allstate Ins. Co.,* 763 A.2d 401 (Pa.Super.2000) (holding that, where policy terms conflict with MVFRL, court cannot give effect to contractual provision, even if those terms are clear and unambiguous). Thus, the court concluded that the policy and its end result are "directly at odds with the statutory language, which defines an underinsured vehicle as one for which the tortfeasor's liability limits are *less than the victim's losses and damages.*" *Id.* at 748 (emphasis in original).

██ Here, the MVFRL defines the term "insured" as including, *inter alia,* named insureds and any resident relatives of named insureds. The Prudential policy definition of "insured," however, purports to narrow the broad classification provided by the MVFRL by deeming resident relatives, such as Adam Colbert, to be "insured" only when they are using a vehicle specifically insured under the Prudential policy. As a result, the policy's more restrictive definition of "insured" is in conflict with the MVFRL. Nothing in the MVFRL permits Prudential or any other insurer to diminish the MVFRL's

definition of "insured" and thereby provide coverage of a lesser scope than the MVFRL requires. Indeed, "stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws." *Allwein,* 671 A.2d at 752 (quoting Couch on Insurance 2d, *supra,* § 13.7 at 827). Thus, the Prudential definition of "insured" must yield, even though it is clear and unambiguous. Accordingly, in answer to the first certified question, we hold that the restrictive definition of "insured" within the Prudential policy impermissibly narrows and conflicts with the plain language of the MVFRL.[3]

■ The second question posed by the Third Circuit is whether the "other household vehicle" exclusion contained in the Prudential policy is void as against the public policy of the MVFRL, as applied to Adam Colbert. The Prudential "other household vehicle" exclusion, under which Prudential independently denied UIM benefits, provides:

### OTHER HOUSEHOLD VEHICLES

We will not pay for bodily injury to anyone occupying or struck by a motor vehicle owned or leased by you or a household resident which is not covered under this policy, or if the liability coverage of that vehicle is used to pay any portion of an insured's bodily injury liability claim.

R. 127a (emphasis omitted). This type of exclusion is commonly known as a "family car exclusion," as it excludes coverage for an otherwise insured individual when that person

---

**3.** The Colberts also assert that 75 Pa.C.S. § 1733, which provides a statutory priority of recovery when multiple policies apply, evinces the Legislature's intent that an individual may receive benefits under a policy of insurance covering a vehicle other than the one involved in the accident, so long as he is a paid insured under the secondary policy. Appellants' Br. at 17–18. However, as this Court noted in *Burstein v. Prudential Property and Casualty Insurance Co.,* "[w]hile Section 1733 contemplates that UM and UIM coverage may be portable in some instances, *it does not suggest that UM or UIM coverage would extend where the coverage has been specifically excluded,* as is the case here." 809 A.2d 204, 209 n. 7 (Pa.2002) (emphasis added).

is occupying a separately owned vehicle that is not insured under the subject policy.

As stated *supra,* courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy. *Eichelman,* 551 Pa. 558, 711 A.2d 1006. There is no dispute that, as a matter of contract interpretation, the "other household vehicle" policy exclusion would justify Prudential in denying coverage for Adam Colbert's collision. Thus, although we hold that Adam was an "insured" under Prudential's policy pursuant to Section 1702 of the MVFRL, *see supra,* he must nonetheless demonstrate that the "other household vehicle" exclusion is unenforceable as violative of clearly expressed public policy.

This Court's cautious approach in examining whether a contract provision violates the often formless face of public policy is well established. As we recently reiterated in *Burstein v. Prudential Property and Casualty Insurance Co.,* 809 A.2d 204 (Pa.2002),

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

*Id.* at 207 (quoting *Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006, 1008 (1998)); *see also Hall v. Amica Mut. Ins. Co.,* 538 Pa. 337, 648 A.2d 755, 760 (1994) (quoting *Muschany v. United States,* 324 U.S. 49, 66–67, 65 S.Ct. 442, 89 L.Ed. 744 (1945)). Moreover, the application of public policy concerns in determining the validity of an insurance exclusion is dependent upon the factual circumstances present-

ed in each case. *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234, 1240 (1994).

Our recent decision in *Burstein* addressed the application of public policy to coverage exclusions.[4] In *Burstein,* a speeding motorcyclist struck the insureds as they were driving a non-owned, employer-provided vehicle. The insureds collected the maximum amount payable under the motorcyclist's insurance policy, but were not fully compensated for their injuries. After discovering that the employer-provided vehicle was not insured with UIM coverage, the insureds attempted to recover UIM coverage from a policy that covered three vehicles that they owned, none of which were involved in the collision. The insurance company denied the claim because the policy specifically excluded regularly used, non-owned cars, such as the employer-provided vehicle that the insureds had driven on a

---

4. The dissent states that *Burstein* "is not the only, or even the most pertinent, judicial teaching on the question presented here. In my view, a succession of earlier rulings on the validity of family car exclusions, ignored by the majority, are instructive." Dissenting Op. at 755 (discussing *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006 (1998); *Windrim v. Nationwide Ins. Co.*, 537 Pa. 129, 641 A.2d 1154 (1994); *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234 (1994)).

The dissent, however, finds each of these cases distinguishable from the case *sub judice.* Regarding *Eichelman*, it states that: "As this Court recognized in *Eichelman*, an insured should not be permitted to demand coverage for a risk for which coverage was not elected or premiums paid. That concern is not implicated in this case." *Id.* at 759. Likewise, the dissent distinguishes *Windrim*, stating that: "The concern that voiding the exclusion in *Windrim* would provide a disincentive to purchase insurance coverage on family vehicles expressed by the Court in *Windrim* does not exist in the instant case." *Id.* at 758. Finally, concerning *Paylor*, it states that: "[T]he plaintiff in *Paylor* in effect was attempting to convert inexpensive underinsured motorist coverage purchased on automobile policies into additional—and more costly—liability coverage for a separately-insured mobile home. . . . In contrast to the [plaintiff in *Paylor* ], appellants in this case cannot be said to have been attempting to convert their inexpensive underinsurance coverage into additional, and more expensive, liability coverage." *Id.* at 757.

Thus, it seems that even the dissent agrees that neither *Paylor, Windrim*, nor *Eichelman* addressed the factual concerns present in this case. Indeed, we do not ignore the decisions that the dissent discusses. Rather, we find that our analysis in *Burstein* controls the facts of this case, as the factual result that we proscribed in *Burstein* is duplicated here: gratis coverage on a vehicle that the insurer never knew existed. *See infra* at 754–55.

regular basis. *Burstein,* 809 A.2d at 205. The insureds sued the insurance company and claimed that the regularly used, non-owned car exclusion was unenforceable because it violated public policy. Both the trial court and the Superior Court agreed, holding that the exclusion was void as against public policy. *See Burstein v. Prudential Prop. & Cas. Ins. Co.,* 742 A.2d 684 (Pa.Super.1999) (plurality opinion).

On appeal, this Court reversed. *Burstein,* 809 A.2d 204. We examined the insureds' public policy claim in the context of the MVFRL, and once more recited the "dominant and overarching public policy" of the MVFRL:

> [t]he repeal of the No–Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiralling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL. This reflects the General Assembly's departure from the principle of "maximum feasible restoration" embodied in the now defunct No–Fault Act.

*Id.* at 207 (quoting *Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234, 1235 (1994)) (footnote omitted).

Having recognized the conservative public policy of the MVFRL, we explained its function and operation relative to insurance policy exclusions:

> In light of the primary public policy concern for the increasing costs of automobile insurance, it is arduous to invalidate an otherwise valid insurance contract exclusion on account of that public policy. This policy concern, however, will not validate any and every coverage exclusion; rather, *it functions to protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure.* Thus, operationally, insureds are prevented from receiving gratis coverage, and insurers are not com-

pelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively.

*Id.* at 208 (emphasis added).

We then returned to the insureds' contention that the regularly used, non-owned car exclusion was unenforceable because it violated public policy, and observed that the insureds had neither obtained UIM coverage for the employer-provided vehicle nor disclosed their regular use of the vehicle to their insurance company. *Id.* As a result, we concluded that "voiding the exclusion would frustrate the public policy concern for the increasing costs of automobile insurance, as the insurer would be compelled to underwrite unknown risks that it has not been compensated to insure." *Id.* We reasoned that:

> *Most significantly, if this Court were to void the exclusion, insureds would be empowered to regularly drive an infinite number of non-owned vehicles, and receive gratis UIM coverage on all of those vehicles if they merely purchase UIM coverage on one owned vehicle.* The same would be true even if the insureds never disclose any of the regularly used, non-owned vehicles to the insurers, as is the case here. Consequently, insurers would be forced to increase the cost of insurance, which is precisely what the public policy behind the MVFRL strives to prevent. Such result is untenable.

*Id.* (emphasis added). Accordingly, this Court held that "the regularly used, non-owned car exclusion and its contractual restraint on UIM portability comport with the underlying policies of the MVFRL." *Id.* at 210.

The facts of this case differ from the facts of *Burstein* in two respects. First, Adam Colbert owned the vehicle in which he was injured. The reasoning of *Burstein,* however, was not predicated upon ownership of the vehicle in which the claimant was injured; rather, it focused upon whether the insurer was compelled to underwrite unknown risks that it has not been compensated to insure. *See id.* at 208. Second, Adam purchased UIM coverage for his vehicle from State Farm Insur-

ance Company, and was also an insured on his parents' insurance policy from Prudential. Thus, each of the Colberts' vehicles were covered by insurance, whereas the employer-provided vehicle in *Burstein* did not carry UIM coverage. While this factual circumstance differs from *Burstein* at first glance, it still yields the same result that we proscribed in *Burstein:* gratis coverage on a vehicle that the insurer never knew existed.

It is undisputed that Adam Colbert purchased UIM coverage on his vehicle from State Farm and actually received the maximum amount payable under that coverage. Thus, *Adam received the UIM coverage for which he paid.* Nonetheless, Adam also attempted to recover UIM benefits from his parents' insurance policy with Prudential. Neither Adam nor his parents paid Prudential to insure his car; indeed, the "other household vehicle exclusion" in Prudential's policy expressly excluded such vehicles from coverage. Likewise, there is nothing to suggest that Adam or his parents ever disclosed Adam's vehicle to Prudential. Under these facts, voiding the "other household vehicle exclusion" would force Prudential into the same predicament as was the insurer in *Burstein:* it would be compelled to underwrite unknown risks that the insureds neither disclosed nor paid to insure. In addition, Adam would stand to receive gratis coverage or, more accurately, *double coverage.*

Moreover, voiding the "other household vehicle" exclusion would empower insureds to collect UIM benefits *multiplied by the number of insurance policies on which they could qualify as an insured,* even though they only paid for UIM coverage on one policy. As a result, insureds would receive benefits far in excess of the amount of coverage for which they paid, as would be the case here were we to void the exclusion. The same would be true even if the insureds never disclose any of the other household vehicles to the insurers. Consequently, insurers would be forced to increase the cost of insurance, which is precisely what the public policy behind the MVFRL strives to prevent. As we rejected this result in *Burstein,* we must reject it here.

Accordingly, in response to the second question posed by the United States Court of Appeals for the Third Circuit, we hold that the "other household vehicle" exclusion, as applied to Adam Colbert, is consistent with the underlying public policy of the MVFRL.

Having answered the certified questions, we refer the matter back to the United States Court of Appeals for the Third Circuit.

Justice SAYLOR concurs in the result.

Justice CASTILLE files a concurring and dissenting opinion in which Justice NEWMAN joins.

Justice CASTILLE, Concurring and Dissenting

I concur in the majority's resolution of the first certified question that the restrictive definition of "insured" contained in the Prudential policy impermissibly narrows and conflicts with the plain language of the Motor Vehicle Financial Responsibility Law (MVFRL) with the result that Adam Colbert must be deemed an insured under the policy. I disagree, however, with the majority's conclusion on the second certified question that the "other household vehicle" exclusion—a type of exclusion commonly known as a "family car exclusion"—is valid as applied in this case. Therefore, I respectfully dissent on the second certified question.

The second certified question is whether the "other household vehicle" exclusion contained in the Prudential policy is void as against public policy under the MVFRL as applied to Adam Colbert. The exclusion, which is set forth in full in the majority opinion, excludes coverage for bodily injury occurring in a motor vehicle owned or leased by an insured or household resident but not insured under the Prudential policy. Prudential independently denied Adam's underinsured motorist benefits claim pursuant to this exclusion.

The language of the exclusion is clear and unambiguous. As the majority correctly notes, courts generally must enforce the plain meaning of a clear and unambiguous contract provi-

sion unless to do so would be contrary to a clearly expressed public policy. *See Burstein v. Prudential Property & Cas. Ins. Co.*, 809 A.2d 204, 206 (Pa.2002), *citing Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006, 1008 (1998).

In concluding that the "other household vehicle" exclusion is not contrary to a clearly expressed public policy, the majority relies entirely upon this Court's recent decision in *Burstein*—a case involving a different exclusion and distinguishable facts. I still believe that *Burstein*, which I joined, was correctly decided. But that case, of course, is a judicial decision, not legislation, and it is not the only, or even the most pertinent, judicial teaching on the question presented here. In my view, a succession of earlier rulings on the validity of family car exclusions, ignored by the majority, are instructive. Those cases counsel that particular attention must be paid to the factual circumstances in each case.

In *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234 (1994), this Court upheld a family car exclusion in the face of a statutory and public policy challenge. The relevant facts of *Paylor* were as follows. The plaintiff's decedent, Betty Dymond, was a passenger in a motor home operated by her husband, Fred, when the motor home was involved in a single-vehicle accident in which both of the Dymonds were killed. The motor home was insured under a policy with Foremost Insurance Company, which named both Betty and Fred Dymond as insureds. At the time of the accident, the Dymonds owned three other vehicles, which were separately insured under a policy issued by the defendant, Hartford Insurance Company. The Hartford policy also named both Betty and Fred Dymond as insureds. The plaintiff, who was the daughter of the decedents and the administratrix of Betty Dymond's estate, recovered the Foremost policy limits and then sought underinsured motorist benefits under the Hartford policy. Hartford denied coverage, citing the family car exclusion in its policy with the Dymonds. The plaintiff then filed a declaratory judgment action against Hartford seeking a ruling that the family car exclusion violated the MVFRL and was void as against public policy. The trial court ruled in favor of Hart-

ford, but the Superior Court reversed in an unpublished opinion.

Upon further appeal by Hartford, this Court reversed the Superior Court. We began by noting that the repeal of the former No–Fault Act [1] and replacement of it with the MVFRL "reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving our public highways," and that that concern "is the public policy that is to be advanced by statutory interpretation of the MVFRL." 640 A.2d at 1235. We also noted that the MVFRL's public policy represented a departure by the General Assembly "from the principle of 'maximum feasible restoration' embodied in the now defunct No–Fault Act." *Id.* Turning to the underinsurance coverage specifically at issue in the case, the *Paylor* Court next noted that such coverage was not required to be offered until enactment of the MVFRL. By requiring insurers to offer underinsurance coverage, the MVFRL addressed what had been "the anomalous situation that 'claimants would find themselves in a better position were the tortfeasor's vehicle totally uninsured, rather than underinsured.' " *Id.* at 1236, *quoting Davis v. Government Employees Ins. Co.,* 500 Pa. 84, 454 A.2d 973, 976 (1982) (further citation omitted). The *Paylor* Court also emphasized the distinct purpose and function of underinsured motorist coverage, which is " 'to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate coverage to compensate for the injuries caused by his negligence.' " *Paylor,* 640 A.2d at 1235–36, *quoting Wolgemuth v. Harleysville Mutual Ins. Co.,* 370 Pa.Super. 51, 535 A.2d 1145 (1988), *allocatur denied,* 520 Pa. 590, 551 A.2d 216 (Pa.1988).

In examining the question of whether enforcement of the family car exclusion would violate public policy under the specific facts in *Paylor,* the Court surveyed relevant Superior Court decisional law concerning the family car exclusion,

1. The No–Fault Act was codified at 40 P.S. § 1009.101 *et seq.*

beginning with *Wolgemuth*. *Paylor's* discussion of *Wolgemuth* is helpful in properly framing the inquiry here. In *Wolgemuth*, the *Paylor* Court noted, the Superior Court had found that a guest passenger injured in a one-vehicle accident could not recover both liability benefits and underinsured motorist benefits under the same policy:

> The [*Wolgemuth*] court stated,
>
>> The language of the statute itself suggests that underinsurance motorist coverage requires the existence of at least *two* applicable policies of motor vehicle insurance. *See* 75 Pa.C.S. § 1731(c). An underinsured motor vehicle, must, by definition, be an insured vehicle. Thus, the statute contemplates one policy applicable to the vehicle which is at fault in causing the injury to the claimant and which is the source of liability coverage (which is ultimately insufficient to fully compensate the victim), and a *second* policy, under which the injured claimant is either an insured or a covered person. It is the *second* policy which the statute contemplates as the source of underinsured motorist coverage, where the liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries.
>
> [*Wolgemuth,*] 535 A.2d at 1149 (Emphasis supplied). The court concluded that the statutory scheme of the MVFRL contemplated recovery by the passenger of the available limits of liability applicable to the negligent vehicle, with recourse to underinsurance benefits pursuant to any separate insurance policy under which the passenger was an insured, if any. The court held that the definition of underinsured motor vehicle contained in the insurance policy did not violate the MVFRL or public policy.

*Paylor*, 640 A.2d at 1236–37.

After surveying additional Superior Court cases decided after *Wolgemuth*, the *Paylor* Court concluded that:

> The litany of cases demonstrates that the "family car exclusion" is not necessarily violative of public policy or the legislative intent underlying the MVFRL. **The enforce-**

**ability of the exclusion is dependent upon the factual circumstances presented in each case.** Allowing the "family car exclusion" to bar coverage in cases where a plaintiff is attempting to convert underinsured coverage into liability coverage is a **limited exception to the general rule that such provisions are invalid as against the policy of the MVFRL.**

640 A.2d at 1240 (citation omitted) (emphases supplied). Ultimately, this Court held in *Paylor* that the family car exclusion in that case involving a single-vehicle accident was not void as against public policy. This was so because the plaintiff in *Paylor* in effect was attempting to convert inexpensive underinsured motorist coverage purchased on automobile policies into additional—and more costly—liability coverage for a separately-insured mobile home. In such a circumstance, enforcement of the family car exclusion, far from being contrary to public policy, "serves to promote the legislative intent of the MVFRL and the expression of public policy articulated in the case law." Accordingly, we held that the case fell within a limited exception to the general rule that family car exclusions are invalid under the MVFRL. 640 A.2d at 1241.

In contrast to the Dymonds, appellants in this case cannot be said to have been attempting to convert their inexpensive underinsurance coverage into additional, and more expensive, liability coverage. This was a two-car accident in which Adam Colbert was injured by a third-party tortfeasor whose liability coverage was inadequate to compensate him for his injuries. As we noted in *Paylor,* the purpose of underinsured motorist coverage is to protect against precisely what occurred here— an insured injured by a negligent driver of another vehicle who had inadequate coverage to compensate for the injuries caused by his negligence.

This Court next addressed exclusionary language, although of a different nature, in *Windrim v. Nationwide Ins. Co.,* 537 Pa. 129, 641 A.2d 1154 (1994). The insurance policy at issue in *Windrim* excluded uninsured and underinsured motorists benefits where the insured or a resident relative was injured in a motor vehicle owned by the insured or resident relative and

not insured for uninsured or underinsured motorist coverage. The plaintiff in *Windrim* was injured while driving his own uninsured vehicle and sought to recover uninsured motorist benefits from his mother's automobile insurance policy on the grounds that he was a resident relative and therefore covered by the policy. This Court held that the exclusion did not violate public policy in those factual circumstances:

We therefore hold that the exclusion in Windrim's mother's insurance policy is a valid and enforceable provision. Our conclusion is bolstered by the fact that Windrim's argument, if accepted, would actually contravene the legislative intent behind the MVFRL by serving as a disincentive to insure vehicles. As Judge Popovich observed, "[a] possible result ... is that many individuals owning several vehicles will purchase coverage for only one of them. Likewise, relatives living with an insured will be less inclined to purchase insurance for their vehicles, instead seeking uninsured motorist coverage under their relative's insurance policy." *Windrim,* 412 Pa.Super. at 162, 602 A.2d at 1360 (Popovich, J., dissenting). Clearly, the General Assembly did not envision nor intend such abuses of the system when it enacted the MVFRL.

641 A.2d at 1158.

The concern that voiding the exclusion in *Windrim* would provide a disincentive to purchase insurance coverage on family vehicles expressed by the Court in *Windrim* does not exist in the instant case. Adam Colbert did purchase insurance on his vehicle; therefore, *Windrim* does not command enforcement of the exclusion in this case.

This Court also addressed exclusionary language in an automobile policy in *Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006 (1998). The exclusionary provision in *Eichelman* was similar to the exclusion at issue in *Windrim: i.e.,* it excluded underinsured motorist coverage where the insured or a resident relative was injured while occupying a vehicle owned by the insured or resident relative but not insured for underinsured motorist coverage. The plaintiff/appellant in *Eichelman* was riding his motorcycle when he was

struck and injured by a negligent driver operating a pick-up truck. The appellant had expressly waived underinsured motorist coverage on the insurance policy issued by Aegis Security Insurance Company which covered his motorcycle. The appellant recovered the limits of liability from the truck driver's insurer and then sought underinsured motorist coverage under two insurance policies his mother and her husband had with Nationwide, which covered their two automobiles. The thirty-one year-old appellant resided with his mother at the time of the accident.

This Court upheld the exclusion in the Nationwide policy, finding that such a holding furthered the purposes of the MVFRL on the facts of that case:

> [U]nderinsured motorist coverage serves the purpose of protecting innocent victims from underinsured motorists who cannot adequately compensate the victims for their injuries. That purpose, however, does not rise to the level of public policy overriding every other consideration of contract construction. As this Court has stated, "there is a correlation between premiums paid by the insured and the coverage the claimant should reasonably expect to receive." *Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 349, 648 A.2d 755, 761 (1994). Here, appellant voluntarily chose not to purchase underinsured motorist coverage. In return for this choice, appellant received reduced insurance premiums. As appellant admitted in his answers to interrogatories, he was not aware that his mother and her husband had insurance policies which could have possibly covered him. Moreover, it is not readily apparent that appellee knew of appellant's existence when it issued the two insurance policies or that the insurance premium charged to his mother and her husband reflected an intent on their part to provide underinsured motorist coverage to appellant. Thus, this Court concludes that giving effect to the "household exclusion" in this case furthers the legislative policy behind underinsured motorist coverage in the MVFRL since it will have the effect of holding appellant to his voluntary choice.

Allowing the "household exclusion" language to stand in this case is further bolstered by the intent behind the MVFRL, to stop the spiralling costs of automobile insurance in the Commonwealth. If appellant's position were accepted, it would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household. If this result were allowed, it would most likely result in higher insurance premiums on all insureds (even those without family members living at their residence) since insurers would be required to factor expanded coverage cost into rates charged for underinsured motorist coverage. Thus, allowing the "household exclusion" language of the two insurance policies at issue to bar recovery by appellant of underinsured motorist benefits is consistent with the intent behind the enactment of the MVFRL.

711 A.2d at 1010.

These decisions were followed by our recent decision in *Burstein*. That case involved a separate exclusion, a "regularly used, non owned car" exclusion, and the automobile accident at issue there took place in a vehicle provided by Mrs. Burstein's employer and regularly used by her for personal use. The automobile insurance policy covering the employer's car did not provide UIM coverage. Here, Adam Colbert owned the automobile in which he was injured, and his insurance policy on the car did include UIM coverage. In addition, Adam was named on his parents' policy with Prudential as a licensed driver and household resident.

The majority notes these distinctions but nevertheless concludes that "[w]hile this factual circumstance differs from *Burstein* at first glance, it still yields the same result that we proscribed in *Burstein*: gratis coverage on a vehicle that the insurer never knew existed." Op. at 754. In my view, the concerns that led to a determination that the exclusion in *Burstein* was valid are not present here. Since Adam Colbert owned the vehicle in which he was injured, purchased underinsured motorist coverage for that vehicle, and was an insured

on his parents' policy with appellee as well—a policy which itself provided underinsured motorist coverage—Prudential was not compelled to underwrite an unknown risk for which it was not compensated.

The overriding concern powering the decisions in *Burstein, Eichelman* and the earlier cases is to ensure that both insurer and insured receive the benefit of what is statutorily required and contractually agreed-upon (consistently with statutory requirements) and nothing more. As this Court recognized in *Eichelman,* an insured should not be permitted to demand coverage for a risk for which coverage was not elected or premiums paid. That concern is not implicated in this case. Adam Colbert purchased insurance on his own vehicle, and specifically paid for coverage for uninsured and underinsured motorist benefits. In addition, his parents purchased an automobile insurance policy that included coverage for both uninsured and underinsured motorist benefits. Significantly, and distinct from *Eichelman,* Adam was listed as a resident relative and driver of the family cars on his parents' policy with Prudential. Prudential was aware that it was extending coverage to Adam on his parents' policy and was certainly capable of including that fact in its premium calculation, and very well may have done so.

While the exclusion at issue in *Windrim* is not the same as the exclusion at issue in the case *sub judice,* this Court's opinion in *Windrim* is nevertheless instructive in grappling with the question of public policy, for it enunciates an additional concern with invalidating exclusionary language, *i.e.,* that exclusionary provisions should not casually be invalidated where to do so would create an incentive for families to purchase coverage for only one vehicle and then seek coverage for other household vehicles under that single policy. Here, however, voiding the exclusion will not trigger the concern articulated in *Windrim.* As I have already noted, appellants purchased policies including uninsured and underinsured coverage on all of their vehicles.

As this Court has repeatedly recognized, the presence of a legitimate public policy concern, including the primary concern

of the MVFRL with controlling the cost of automobile insurance, does not require a reflexive conclusion that all exclusionary clauses are valid. The overriding concern with the costs of insurance cannot alter the fact that a consumer of automobile insurance is entitled to coverage for risks for which he contracted and paid. In this case, appellant parents entered into an insurance contract with Prudential that included coverage for their son, Adam, who also insured his own vehicle. Appellants specifically and voluntarily purchased underinsurance coverage that insurers are required to offer by the MVFRL, but consumers are not obliged to purchase, and they paid premiums for that optional coverage to both Adam's insurer and Prudential.

For the reasons stated above, the exceptional, policy-based circumstances that led to this Court's upholding of exclusions in cases such as *Burstein, Paylor* and *Eichelman* are decidedly not present here. The majority's decision upholding the other household vehicle exclusion here, far from furthering the purposes of the MVFRL, instead thwarts them by allowing insurers to deny benefits for which their insureds have specifically paid. Such a circumstance, in turn, provides a disincentive to insureds to pay premiums for coverage not required by law.

Accordingly, in response to the second question posed by the Third Circuit, I would hold that, under the facts of this case, the "other household vehicle exclusion" in the Prudential policy, as applied to Adam Colbert, is void as against public policy.

Justice NEWMAN joins this concurring and dissenting opinion.