

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-30-2003

# Nationwide Mutl Ins v. Viola

Precedential or Non-Precedential: Non-Precedential

Docket 01-4272

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Nationwide Mutl Ins v. Viola" (2003). *2003 Decisions.* Paper 603.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/603

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 01-4272 & 01-4443

———————

NATIONWIDE MUTUAL INSURANCE COMPANY,

Appellant (No. 01-4272)

v.

RANDALL J. VIOLA

Appellant (No. 01-4443)

———————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action Nos. 00-cv-00060/E)
District Judge: Honorable Sean J. McLaughlin

———————

Submitted Under Third Circuit LAR 34.1(a)
November 21, 2002

Before: BARRY and AMBRO, <u>Circuit Judges</u>
DOWD*, <u>District Judge</u>

(Opinion filed: April 30, 2003)

———————

OPINION

———————

_____*Honorable David D. Dowd, Jr., Senior United States District Judge for the

Northern District of Ohio, sitting by designation.
AMBRO, <u>Circuit Judge</u>

Appellant/Cross-Appellee Nationwide Mutual Insurance Company filed suit for a declaratory judgment to determine its obligation, if any, to pay underinsured motorist benefits to Appellee/Cross-Appellant Randall J. Viola. Both sides moved for summary judgment, which the District Court granted in part and denied in part, and a bench trial ended in a partial decision for Viola. Both parties appealed.[1] We reverse the District Court's ruling that an exclusionary clause in the parties' insurance contract is void as against public policy.

I.

On August 6, 1999, Viola was involved in an accident while riding his motorcycle. The motorcycle was insured under a policy issued by Dairyland Insurance Company which provided underinsured motorist (UIM) benefits in the amount of $100,000 per person and $300,000 per occurrence. At that time Viola had two additional automobiles – a 1995 Ford Bronco and a 1999 Ford Ranger – covered by a Nationwide insurance policy that also provided UIM benefits in the amount of $100,000 per person and $300,000 per occurrence.

The accident occurred when Robert Hovis's car hit Karen Silvas's car from behind, pushing Silvas's car into the lane occupied by Viola, resulting in a collision.

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291.

Hovis's insurance company tendered its policy's bodily injury liability limit to Viola. Dairyland also tendered to Viola its policy's UIM benefits limit of $100,000. Viola then presented a claim for the maximum UIM benefits available under the Nationwide policy covering his other two vehicles. Nationwide refused the claim on the grounds that i) the policy contained a "household exclusion" clause that precluded payment in such circumstances, and ii) Viola had waived the right to "stack" his UIM benefits under the Nationwide policy onto the UIM benefits of the Dairyland policy.

In February 2000, Nationwide filed suit for a declaratory judgment in the Western District of Pennsylvania. Nationwide moved for summary judgment, but the District Court in October 2000 found that disputed issues of material fact existed, and denied the motion in its entirety. Viola then moved for summary judgment as well, and the District Court in August 2001 granted this motion in part – finding the household exclusion clause invalid as contrary to public policy, and denied it in part – finding that material issues of fact existed as to the validity of the stacking waiver. A bench trial was held in November 2001, and the Court concluded that Viola had waived his right to stack UIM benefits, but this waiver applied only to intra-policy stacking (*i.e.*, combining benefits within the Nationwide policy), and did not bar inter-policy stacking (*i.e.*, combining benefits from both the Nationwide and Dairyland policies). In practical terms, Viola could recover $100,000 of UIM benefits under the Nationwide policy.

Nationwide appealed and Viola cross-appealed the District Court's pretrial rulings

3

and decision. Oral argument before our Court was scheduled for November 21, 2002, but was cancelled prior to that date and the case held in abeyance pending the opinion of the Pennsylvania Supreme Court in *Prudential Prop. and Cas. Ins. Co. v. Colbert* – subsequently decided on December 31, 2002, and reported at 813 A.2d 747 (Pa. 2002). *Colbert* was submitted to the Pennsylvania Supreme Court on a petition for certification of questions of law from our Circuit. One of these questions asked whether the "other household vehicles" exclusion clause in the insurance policy in that case is void as contrary to Pennsylvania public policy, as embodied in the Commonwealth's Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701-1799.7. *Id.* at 748-49. The Pennsylvania Supreme Court's answer to that question – that the exclusion is consistent with the underlying public policy of the MVFRL – governs our resolution of this appeal.

## II.

We begin by reviewing the Pennsylvania Supreme Court's discussion in *Colbert* of exclusionary insurance contract clauses and the policy dictates of the MVFRL. Adam Colbert was involved in an accident while driving a car he had insured under a policy issued by State Farm Insurance Company that included uninsured motorist (UM) and UIM coverage. Colbert lived with his parents, who owned three vehicles, all insured with both UM and UIM coverage under a single policy issued by Prudential. After Colbert received the maximum amount of liability coverage available under the tortfeasor's

4

policy, as well as the maximum amount of UIM coverage available under his own State Farm policy, he claimed UIM benefits under his parents' Prudential policy. Prudential denied the claim, in part because the parents' policy contained an "other household vehicles" exclusion which stated:

> We will not pay for bodily injury to anyone occupying or struck by a motor vehicle owned or leased by you or a household resident which is not covered under this policy, or if the liability coverage of that vehicle is used to pay any portion of an insured's bodily injury liability claim.

*Id.* at 751. Prudential filed a declaratory judgment action against the Colberts in the Western District of Pennsylvania. The District Court granted summary judgment in Prudential's favor, finding, *inter alia*, that the "other household vehicles" provision excluded Adam Colbert from coverage in those circumstances.

In analyzing the issue as a certified question of law from our Court, the Pennsylvania Supreme Court repeated the well-settled proposition that courts must give plain meaning to unambiguous contract provisions unless doing so would be contrary to public policy, as expressed in the state's laws and legal precedents. *Id.* at 752. Furthermore, the validity of exclusionary insurance contract provisions depends on the facts of each case. *Id.*

The *Colbert* Court next examined its recent decision in *Burstein v. Prudential Prop. and Cas. Ins. Co.*, 809 A.2d 204 (Pa. 2002), which also involved an exclusionary clause challenged as contrary to public policy. In *Burstein*, the insureds were in an accident while driving a non-owned, employer-provided car that was not insured with

5

UIM coverage.  After recovering the maximum amount payable from the tortfeasor's policy, and unable to recover under the subject vehicle's policy, the insureds filed a claim for UIM benefits under the policy that covered three vehicles they owned personally.  The insurer of the personal vehicles denied the claim because that policy specifically excluded regularly used, non-owned cars.  Both the trial court and Superior Court invalidated the exclusion as contrary to public policy, but the Pennsylvania Supreme Court reversed, holding that the exclusion was enforceable.  In so holding, *Burstein* reiterated that the "dominant and overarching public policy" of the MVFRL was "legislative concern for the spiralling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways."  809 A.2d at 207, 08 n.3 (internal citation omitted).  Having recognized the primary public policy of the MVFRL to be cost containment, the Court explained that this policy concern "will not validate any and every coverage exclusion; rather, it functions to protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure."  *Id.* at 208.  Thus, "operationally, insureds are prevented from receiving gratis coverage, and insurers are not compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively."  *Id.*

*Colbert* recognized that the facts of its case were distinguishable from *Burstein*: Adam Colbert owned and purchased UIM coverage for the vehicle in which he was injured, and he was a named insured on his parents' policy.  Nonetheless, the "other

6

household vehicles" exclusion in his parents' policy operated to prevent "the same result that we proscribed in *Burstein*: gratis coverage on a vehicle that the insurer never knew existed" and had not been compensated to insure. *Colbert*, 813 A.2d at 754. Adam Colbert received the coverage for which he paid. But neither he nor his parents paid Prudential to insure his car; rather, the Prudential policy expressly excluded "other household vehicles." In addition, the record did not indicate that Prudential was ever informed of Adam Colbert's vehicle.

*Colbert* recognized, moreover, the broader implications were it to void the exclusion in that case. Insureds could collect UIM benefits from every policy on which they were a named insured, even if the insurer had not been compensated to underwrite, or even been informed of, the risk. The upshot is that "insureds would receive benefits far in excess of the amount of coverage for which they paid . . . ." *Id.* "Consequently, insurers would be forced to increase the cost of insurance, which is precisely what the public policy behind the MVFRL strives to prevent. As we rejected this result in *Burstein*, we must reject it here." *Id.* at 754-55.

### III.

We conclude that *Colbert* compels reversing the District Court's ruling that the household exclusion clause in Viola's insurance contract with Nationwide is void as

7

against public policy.[2]  Granted, the facts in this case differ somewhat from those in *Colbert*.  For example, Viola was the named insured on both the Dairyland and Nationwide policies.  Nevertheless, the exclusionary clause at issue here is functionally identical to that challenged in *Colbert*; both operate to exclude coverage if the insured is driving a vehicle that he owns but has not insured under the subject policy.[3]

Viola argues that whether an exclusionary contract provision is valid depends on the factual circumstances of each case, and he cites a number of decisions in which courts have found similar clauses to be invalid as against Pennsylvania public policy.  We acknowledge, as did the District Court, that this issue has been the subject of multiple decisions over the past decade, leaving less than a straight trail.  *Nationwide Mut. Ins. Co. v. Viola*, No. 00-60, slip. op. at 4-6 (W.D. Pa. Aug. 13, 2001) (reviewing precedent).  To the extent that a trend may be discerned, however, courts generally uphold the validity of household exclusion clauses.  *See, e.g., Nationwide Mut. Ins. Co. v. Ridder*, 105 F. Supp. 2d 434, 436 (E.D. Pa. 2000) ("While the Pennsylvania Supreme Court has held that the enforceability of the exclusion is dependent upon the factual circumstances presented in each case, it has been upheld in nearly all of the cases in which it has been considered.").

---

[2]We exercise plenary review over a district court's decision to grant summary judgment.  *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 167 (3d Cir. 2002).

[3]The policy Viola purchased from Nationwide states that "coverage does not apply to . . . [b]odily injury suffered while occupying a motor vehicle owned by you or a relative but not insured for Underinsured Motorists coverage under this policy; nor to bodily injury from being hit by any such motor vehicle."

More importantly, *Burstein* and *Colbert* clarify the enforceability of insurance policy exclusions within the context of the public policy of the MVFRL. Though factually distinct, both decisions reiterate that the public policy of the MVFRL is to control the rising costs of insurance, and both holdings turn on the principle that exclusionary clauses will not be voided if doing so would compel an insurer "to underwrite unknown risks that the insureds neither disclosed nor paid to insure." *Colbert*, 813 A.2d at 754.

The District Court found that because Viola had purchased the same amount of UIM coverage from both Dairyland and Nationwide, this is not a case where an insured is attempting to convert his UIM benefits into liability recovery, and therefore denying benefits would not promote the MVFRL's intent of controlling the high cost of insurance. In light of *Burstein* and *Colbert*, both released in 2002 after the District Court's decision in this case, we cannot agree. First, *Burstein* and *Colbert* both preclude an insured from receiving free coverage on a vehicle the insurer was not compensated to insure. Viola argues on appeal that Nationwide has not supported its allegations that no premiums were charged for the risks associated with Viola's motorcycle, but Nationwide points to record evidence demonstrating that the premiums it charged to Viola were calculated (as one would expect) according to the vehicles named in the policy only.[4] In other words, Viola

---

[4]Nationwide has submitted the affidavit of James Vajda, an Underwriting Product Consultant, which states:

9

did not compensate Nationwide to insure his motorcycle.

Furthermore, that Viola also purchased UIM benefits from Dairyland for his motorcycle in an amount equal to that purchased from Nationwide for his other vehicles fails to support the District Court's finding that denying benefits will not advance the MVFRL's public policy of cost containment. As stated by the Pennsylvania Supreme Court:

> [V]oiding the "other household vehicle[s]" exclusion would empower insureds to collect UIM benefits *multiplied by the number of insurance policies on which they could qualify as an insured*, even though they only paid for UIM coverage on one policy. As a result, insureds would receive benefits far in excess of the amount of coverage for which they paid, as would be the case here were we to void the exclusion. . . . Consequently, insurers would be forced to increase the cost of insurance, which is precisely what the public policy behind the MVFRL strives to prevent.

*Colbert*, 813 A.2d at 754. The fact that Viola purchased UIM benefits in equal amounts on both policies does not distinguish this case from *Colbert*. Regardless how much UIM coverage Viola purchased on both policies, he only paid for UIM coverage *as to his motorcycle* on the one policy from Dairyland.

To paraphrase the Pennsylvania Supreme Court, it is undisputed that Viola

---

It is the practice of Nationwide to underwrite a policy including only the vehicles listed on the policy. Thus, if an automobile is not listed on the policy, it is not rated in the insured's premium. Likewise, if an insured owns a motorcycle and does not insure the motorcycle with Nationwide, the motorcycle is not included in the premium charged to the insured.

App., Vol. II at 413.

10

purchased UIM coverage for his motorcycle from Dairyland and actually received the maximum amount payable under that coverage. Viola thus received the UIM coverage for which he paid. Yet he also attempted to recover UIM benefits from his Nationwide policy. But Viola did not pay Nationwide to insure his motorcycle; indeed, the "household exclusion" clause in Nationwide's policy expressly excluded this vehicle from coverage. Under these facts, voiding the exclusion would force Nationwide into the same predicament as the insurers in *Burstein* and *Colbert*: it would be compelled to underwrite unknown risks that the insured did not pay to insure. In addition, Viola would stand to receive gratis coverage or, more accurately, double coverage. *See id.*

* * * * *

We hold that the household exclusion clause in the Nationwide policy is consistent with the underlying public policy of the MVFRL. Accordingly, we vacate the judgments of the District Court and remand with instructions to enter a declaratory judgment in Nationwide's favor on this ground.[5]

---

[5]Because our holding that the household exclusion clause is enforceable precludes Viola from recovering any UIM benefits under the Nationwide policy, we need not reach the parties' arguments challenging the District Court's factual findings and legal conclusions as to whether Viola waived his intra- or inter-policy stacking rights. Stated more specifically, the latter half of Nationwide's appeal (docketed at 01-4272) and all of Viola's cross-appeal (docketed at 01-4443) are rendered moot by our ruling.

11

TO THE CLERK:

Please file the foregoing Opinion.

By the Court,

_____/s/ Thomas L. Ambro_____
Circuit Judge