96 A.3d 346

**WARRANTECH CONSUMER PRODUCTS SERVICES, INC.,** Warrantech Home Service Company, Warrantech Home Assurance Company, WCPS of Florida, Inc., Warrantech Automotive, Inc., Warrantech Automotive of Florida, Inc., Butler Financial Solutions, LLC, a/k/a Butler Financial Solutions, Inc., Objectors

v.

**RELIANCE INSURANCE COMPANY IN LIQUIDATION,** (Ancillary Matter to In Re: Reliance Insurance Company in Liquidation, No. 1 Rel 2001).

Appeal of Warrantech Consumer Products Services, Inc., Warrantech Home Service Company, Warrantech Home Assurance Company, WCPS of Florida, Inc., Warrantech Automotive, Inc., Warrantech Automotive of Florida, Inc., Butler Financial Solutions, LLC, a/k/a Butler Financial Solutions, Inc., Objectors.

Supreme Court of Pennsylvania.

Submitted March 26, 2014.

Decided July 21, 2014.

Judith Meyer, pro se.

Timothy Patrick Law, Esq., Philadelphia, David M. Schlecker, Esq., Reed Smith, LLP, for Warrantech Consumer Products Services, Inc.; Warrantech Home Service Company, et al.

Steven Burgess Davis, Esq., Philadelphia, Nancy Livers Margolis, Esq., King of Prussia, Karl Stewart Myers, Esq., Philadelphia, Stradley, Ronon, Stevens & Young, L.L.P., for Insurance Commissioners of Pennsylvania and Michael F. Consendine.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## OPINION

Justice BAER.

This matter arises out of the liquidation proceedings of Reliance Insurance Company ("Reliance"), where one of Reliance's policyholders, Warrantech Consumer Products Services, Inc. *et al.* ("Warrantech"), submitted various proofs of claim seeking reimbursement under two insurance policies in which Reliance agreed to indemnify Warrantech for all future liabilities arising under certain warranty/service contracts Warrantech entered during the applicable policy period. The Commonwealth Court denied Warrantech's claims, holding that 40 P.S. § 221.21 of the Insurance Department Act[1] applies to terminate coverage for all "risks in effect" under a policy of insurance no later than thirty days after the respective insurer enters liquidation, notwithstanding that the relevant policies of insurance were cancelled prior to the date of liquidation. For the reasons that follow, we affirm the order of the Commonwealth Court.

Warrantech is a company that markets and administers extended warranties and service contracts for vehicles, consumer products, and homes. Under the language of these warranty/service contracts (hereinafter "service contracts"), Warrantech agrees to pay for repairs in the event that a customer experiences a product "breakdown" and makes a claim.[2] Absent a claim arising from a breakdown, Warrantech has no contractual obligation to compensate for the service and repair of customer products.

Various states, excluding Pennsylvania, require companies like Warrantech to purchase service contract reimbursement

---

1. *See infra* note 7.

2. Warrantech's service contracts define "breakdown" as: "[a]n event caused by the failure of a covered part. A covered part has failed when it can no longer perform the function for which it was designed solely because of its condition." Brief of Respondent at 3.

insurance policies on the service contracts they sell.[3] As Warrantech offered its service contracts nationwide, in 1999 and 2000, it purchased from Reliance, a Pennsylvania corporation, service contract reimbursement insurance requiring Reliance to reimburse Warrantech for all sums that Warrantech became legally obligated to pay under the service contracts that Warrantech issued while the respective Reliance insurance policies remained in effect (hereinafter the "Reliance Policies").[4] Warrantech paid Reliance approximately $30 million in premiums for these two policies. Brief of Objector at 14.

■ Pursuant to a provision in the Reliance Policies entitled "Effect of Cancellation," Reliance further agreed to indemnify Warrantech for its obligations under the service contracts issued during the respective policy periods even after cancellation of the Reliance Policies.[5] Thus, when War-

3. To coordinate state regulation of service contracts, the National Association of Insurance Commissioners ("NAIC") developed the Service Contracts Model Act, which, as of October 2013, has been adopted in substantial part by eight states. *See Service Contracts Model Act,* National Association of Insurance Commissioners, 3 (last visited May 9, 2014) http://www.naic.org/store/free/MDL–685.pdf. The Service Contracts Model Act defines "reimbursement insurance policy" as follows:
 [A] policy of insurance issued to a provider and pursuant to which the insurer agrees, for the benefit of the service contract holders, to discharge all of the obligations and liabilities of the provider under the terms of the service contracts in the event of non-performance by the provider.
 *Id.* Where a "provider" is defined as:
 [A] person who administers, issues, makes, provides, sells or offers to sell a service contract[.]
 *Id.*

4. The Reliance Policies specifically provided:
 "The Company [i.e. Reliance] agrees to pay the Insured [i.e. Warrantech] ... all sums which the Insured shall become legally obligated to pay as claims under valid ... Service Contracts issued by the Insured while this Policy is in force...."
 Brief of Objector at 16.

5. The "Effect of Cancellation" clause provided:
 Cancellation of this policy shall not affect the duties of the Insured [i.e. Reliance] or the Company [i.e. Warrantech], as set forth in this Policy as to ... Service Contracts issued before the effective date of cancellation.

rantech cancelled coverage after 2000, Reliance remained obligated to reimburse Warrantech for consumer claims arising under all service contracts issued by Warrantech in 1999 and 2000.[6]

On October 3, 2001, the Commonwealth Court placed Reliance in liquidation. Invoking 40 P.S. § 221.21, the court designated November 2, 2001 as the statutory cancellation of coverage date for all Reliance insurance policies.[7] Accordingly, Reliance stopped reimbursing Warrantech for consumer claims arising under the service contracts and insured by the Reliance Policies as of November 2, 2001 (thirty days after Reliance entered liquidation). Warrantech, in turn, assumed responsibility for paying claims that would have been paid by a "claims account" funded by Reliance, had it remained solvent.

Warrantech submitted various proofs of claim in the Reliance liquidation proceedings, seeking, *inter alia*, reimbursement for sums that Warrantech paid on service contracts as a

Brief of Objector at 20.

**6.** The Reliance Policies appear to be occurrence policies. An occurrence policy is defined as "[a]n agreement to indemnify for any loss from an event that occurs within the policy period, regardless of when the claim is made." *Black's Law Dictionary* 810 (7th ed. 2009). In contrast a claims-made policy is "[a]n agreement to indemnify against all claims made during a specified period, regardless of when the incidents that gave rise to the claims occurred." *Id.* at 809; *see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 892 n. 1 (2006) (observing that "[a]n 'occurrence' policy protects the policyholder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy.") (internal citation omitted).

**7.** 40 P.S. § 221.21 provides in full:

**All insurance in effect at the time of issuance [of] an order of liquidation shall continue in force only with respect to the risks in effect, at that time (i) for a period of thirty days from the date of entry of the liquidation order;** (ii) until the normal expiration of the policy coverage; (iii) until the insured has replaced the insurance coverage with equivalent insurance in another insurer or otherwise terminated the policy; or (iv) until the liquidator has effected a transfer of the policy obligation pursuant to section 523(8), whichever time is less.

40 P.S. § 221.21 (emphasis added).

result of claims arising from product breakdowns occurring after November 2, 2001 (the "Cancellation Issue"). Warrantech also sought reimbursement for sums it paid out on certain service contract claims that Reliance approved but never reimbursed Warrantech for because these payouts were supposedly offset by monies that Warrantech received from various state guaranty associations (the "Offset Issue").

The Insurance Commissioner, acting as Liquidator, initially assigned Warrantech's claims against the estate of Reliance a priority level of (e). *See* 40 P.S. § 221.44.[8] Warrantech objected, urging that its claims should receive the higher priority level of (b). On September 27, 2010, the Commonwealth Court sustained Warrantech's objections and remanded for valuation of its claims.

Following remand, the Liquidator issued Notices of Determination (NODs), assigning a zero value to each of Warrantech's proofs of claim against the estate of Reliance.[9] With regard to the Cancellation Issue, the Liquidator concluded that Section 221.21 rendered Warrantech's claims valueless as they were for losses that occurred after the statutory cancellation of coverage date, November 2, 2001. Warrantech objected to the Liquidator's NODs assigning a zero value to its claims, and the Commonwealth Court appointed a referee to review the case. The referee issued a report and recommendation concluding, *inter alia*, that with respect to the Cancellation Issue, the Liquidator appropriately valued Warrantech's claim against the estate of Reliance at zero. The referee further recommended that the Commonwealth Court value Warrantech's claim against Reliance regarding the Offset Issue at $700,194.

On May 30, 2013, Warrantech timely filed an exception to the referee's report and recommendation with respect to the

8. Section 221.44 directs the liquidator to assign a priority level classification to each claim against the insurer's estate, ranging from the highest priority level of (a) to the lowest priority level of (i). *See* 40 P.S. § 221.44.

9. As liquidator, the Commissioner is required to recommend to the Commonwealth Court a value for each claim. *See* 40 P.S. § 221.45.

Cancellation Issue, contending that, notwithstanding Section 221.21, its claims for reimbursement of sums that it paid on service contracts after November 2, 2001 should be valued at $11,900,499.[10]

In a single judge memorandum decision, the Commonwealth Court adopted the referee's recommendations in whole. The court agreed with the referee that Section 221.21 operates to relieve Reliance of all liability to indemnify Warrantech under the service contracts for claims arising from product breakdowns that occurred after November 2, 2001. The court observed that based on the plain language of Section 221.21 (*see supra* note 7), all insurance policies with "risks in effect" at the time a liquidation order is issued are subject to the statutory provision, and that coverage under these policies continues for, at most, a period of thirty days following entry of liquidation. The court reasoned that Section 221.21 applies to the Reliance Policies because, pursuant to the cancellation of coverage provision, Reliance remained at risk for liability. The court concluded that the "risks in effect" at the time of Reliance's liquidation consisted of the possibility that Warrantech would pay for a claim arising from a product breakdown under one if its service contracts issued in either 1999 or 2000, which, in turn, would trigger Reliance's obligation to indemnify Warrantech for the sums paid.

Accordingly, the Commonwealth Court overruled Warrantech's exception, and held that the Liquidator properly valued Warrantech's claim against the Reliance estate with respect to the Cancellation Issue at zero.[11] Warrantech timely appealed the Commonwealth Court's memorandum decision, raising the following issue:

Whether the Commonwealth Court misinterpreted contractual liability insurance policies and a section of the Pennsyl-

10. Neither Warrantech nor the Liquidator took exception to the referee's recommendation that the Commonwealth Court value Warrantech's claim regarding the Offset Issue at $700,194. Accordingly, the Offset Issue has no bearing on the matter before us.

11. In keeping with the referee's recommendation regarding the Offset Issue, the Commonwealth Court ordered that the Liquidator's NODs be amended to indicate a value of $700,194.

vania insurance insolvency statute (40 P.S. § 221.21) (the "Continuance of Coverage Provision") in overruling Warrantech's objections to Notices of Determination ("NODs") issued by the Liquidator of Reliance Insurance Company ("Liquidator"), which allocated no value to consumer claims if they were made after November 2, 2001.

Brief of Objector at 4–5.

Warrantech's appeal presents this Court with an issue of first impression, namely the proper construction of 40 P.S. § 221.21. Warrantech contends that the Commonwealth Court misapplied Section 221.21 when it assigned a zero value to Warrantech's claims against the Reliance estate for reimbursement of sums that it paid under service contracts as a result of claims arising from product breakdowns that occurred after November 2, 2001. Warrantech avers that Section 221.21 does not relieve Reliance of its obligations under the Reliance Policies, and that its claims against the estate of Reliance are therefore properly valued at $11,900,499.

Specifically, Warrantech argues that the Commonwealth Court's application of Section 221.21 unjustifiably divests Warrantech of its rights under the Reliance Policies. Warrantech points to the "Effect of Cancellation" provision contained in the policies, which states that in the event of cancellation of the policies Reliance remains liable (in perpetuity) for all consumer claims arising from product breakdowns under service contracts issued by Warrantech in 1999 and 2000. Thus, Warrantech avers that the contractual liability assumed by Reliance under the Reliance Policies "vested" when Warrantech issued service contracts to consumers in 1999 and 2000, and that neither cancellation of the policies nor application of Section 221.21 can relieve Reliance of its obligation to indemnify Warrantech for claims arising under the service contracts as a result of product breakdowns. Brief of Objector at 20.

Notwithstanding the "Effect of Cancellation" provision, Warrantech alternatively argues that Section 221.21 is inapplicable because based on the language of the statute, it only applies to "insurance in effect at the time of issuance of the

order of liquidation." Noting that Section 221.21 does not define "insurance in effect," Warrantech contends that it is clear from the context of the statute that the language refers to insurance policies within their active policy periods only. Essentially, Warrantech argues that Section 221.21 exclusively applies to claims-made policies.[12] Because the Reliance Policies were terminated in 2000, Warrantech posits that Section 221.21 does not apply to these policies given that they were not "insurance [policies] in effect" at the time of liquidation, notwithstanding that Reliance remained obligated to pay benefits thereunder.

Moreover, Warrantech contends that even if Section 221.21 applied to the Reliance Policies so that coverage for all "risks in effect" at the time of liquidation are terminated no later than thirty days after liquidation, Reliance nonetheless remains liable for consumer claims arising from product breakdowns that occurred after November 2, 2001, because coverage for these claims was triggered prior to liquidation. Citing to case law from other jurisdictions, as well as to 45 C.J.S. Insurance § 640, n.1 (2012), Warrantech maintains that coverage under an insurance policy must be "triggered" by an event that occurs during the applicable policy period. *See Montrose Chem. Corp. v. Admiral Ins. Co.,* 10 Cal.4th 645, 42 Cal. Rptr.2d 324, 913 P.2d 878, 880 n. 2 (1995); *Boston Gas Co. v. Century Indem. Co.,* 454 Mass. 337, 910 N.E.2d 290, 300 (2009). Warrantech surmises that under a service contract reimbursement insurance policy, the event triggering coverage is the issuance of the service contracts by the insured. Warrantech rejects the referee's conclusion that the triggering event is the occurrence of product breakdowns covered by the service contracts or the resulting consumer claims because these breakdowns and corresponding claims can occur both during and after the service contract reimbursement insurance policy period ends, as was the case with the Reliance Policies.

To substantiate its contention that coverage under the Reliance Policies is triggered by the issuance of the service contracts during the applicable policy periods of 1999 and

**12.** *See supra,* note 6.

2000, Warrantech analogizes to the line of cases addressing asbestos bodily injury claims brought under general liability policies. *See J.H. France Refractories Co. v. Allstate Ins. Co.,* 534 Pa. 29, 626 A.2d 502 (1993). Warrantech alludes to the "multiple trigger" theory of liability adopted in this line of cases where an insurer is obligated to indemnify for asbestosis related injuries if any of the following occurs while the insurer is at risk: exposure to asbestos, development of the pathology, or manifestation of the disease. *Id.* at 506. Warrantech likens the issuance of the service contracts to asbestos exposure, and likens consumer claims for product breakdowns under the service contracts to the manifestation of bodily injury from asbestos exposure. Just as coverage under the liability insurance policies in the asbestosis cases is triggered by the exposure to asbestos (and not only its manifestation), Warrantech contends that coverage under service contract reimbursement insurance policies, like the Reliance Policies, is triggered by the issuance of service contracts during the applicable policy period (and not the eventual claims for product breakdowns).

Thus, Warrantech avers that the Commonwealth Court erred in holding that the triggering event under the Reliance Policies was the payment by Warrantech for a consumer claim arising from a product breakdown under one of its service contracts, leading the Commonwealth Court to conclude that Section 221.21 terminated coverage for all these claims occurring after November 2, 2001. Rather, Warrantech asserts that coverage under the Reliance Policies was triggered before liquidation when Warrantech issued the service contracts in 1999 and 2000. Thus, according to Warrantech, the language in Section 221.21 terminating coverage for all "risks in effect" thirty days after the entry of a liquidation order has no bearing on Warrantech's claims against the Reliance estate.

Finally, Warrantech contends that the Commonwealth Court's construction of Section 221.21 frustrates the purpose of the statute by creating a gap in coverage for policyholders whose insurers enter liquidation. Warrantech maintains that the purpose of Section 221.21, entitled "Continuance of Cover-

age," is to give policyholders time to learn of their insurance carrier's insolvency and to seek replacement insurance. Warrantech avers that pursuant to the Commonwealth Court's construction of Section 221.21, companies, like itself, will be unable to secure replacement insurance for service contracts issued prior to the date of their insurer's liquidation. Moreover, Warrantech points to the injustice of requiring policyholders to purchase replacement insurance when their previous policies, purchased at great cost, guaranteed coverage in perpetuity.

In reply, the Insurance Commissioner, acting as statutory liquidator of Reliance ("Liquidator"), argues that Warrantech's claims for reimbursement of liabilities arising after November 2, 2001 were properly valued at zero. The Liquidator maintains that a plain language reading of Section 221.21 establishes that all potential liabilities and claims against an insolvent insurer's estate are terminated no later than thirty days after the entry of a liquidation order with respect to "risks in effect" at the time of liquidation. The Liquidator reasons that if there were "risks in effect" under the, albeit cancelled, Reliance Policies at the time Reliance entered liquidation, then coverage for those risks did not continue past November 2, 2001.

In addition to addressing the plain language of Section 221.21, the Liquidator, observes that under the plain language of the Reliance Policies, Reliance's obligation to indemnify Warrantech is triggered when Warrantech pays for a product breakdown under one of its service contracts issued during the applicable policy period. The Liquidator therefore concludes that the "risks in effect" imposed by the Reliance Policies is the potential for consumer claims arising from product breakdowns under any one of Warrantech's service contracts issued in 1999 and 2000. Accordingly, the Liquidator contends that Section 221.21, which statutorily discontinues insurance coverage with respect to "risks in effect" at the time of liquidation, when applied to the Reliance Policies, precludes Warrantech from seeking reimbursement for consumer claims arising from product breakdowns which occurred subsequent to November

2, 2001, thirty days after the Commonwealth Court issued its order of liquidation.

The Liquidator further argues that the "risks in effect" language in Section 221.21 should be interpreted as not limited to policies with active policy periods at the time of liquidation, but rather as additionally applying to policies, like the Reliance Policies, where the policy periods have ended, but coverage continues. The Liquidator observes that the plain language of Section 221.21 says "risks in effect," not "policy periods in effect." Accordingly, the Liquidator argues that the "Effect of Cancellation" provision in the Reliance Policies does not trump the statutory cutoff of "risks in effect" mandated by Section 221.21.

Finally, while recognizing that the termination of coverage mandated by Section 221.21 might work some hardships, the Liquidator contends that the provision is reasonable and necessary to facilitate the equitable and uniform handling of claims in an insolvent insurer's estate. The Liquidator argues that Section 221.21 does not necessarily apply to protect every policyholder from a coverage gap, but rather allows policyholders who can obtain replacement coverage to do so.[13] The Liquidator warns that if this Court adopts Warrantech's construction of Section 221.21, coverage under service contract reimbursement insurance, such as the Reliance Policies, could continue for decades after an insurer is placed into liquidation simply because a policy was issued and cancelled pre-liquidation. The Liquidator contends that Warrantech's position stands at odds with the chief purpose of Section 221.21, which is to fix the liabilities of insolvent insurers entering liquidation.

Upon review, we recognize that the question presented—whether Section 221.21 applies to terminate coverage for all "risks in effect" under a policy of insurance no later than thirty days after the respective insurer enters liquidation,

13. The Liquidator notes that, contrary to Warrantech's assertion, the Commonwealth Court's interpretation of Section 221.21 does not necessarily create a gap in coverage for policyholders like Warrantech because they can presumably obtain retroactive liability insurance for existing service contracts.

notwithstanding whether the policy of insurance was cancelled prior to the date of liquidation—is a question of law. Likewise, the interpretation of an insurance contract is also a question of law. *401 Fourth St., Inc. v. Investors Ins. Grp.*, 583 Pa. 445, 879 A.2d 166, 170 (2005). As such, our standard of review is *de novo* and our scope of review plenary. *Id.; Carrozza v. Greenbaum*, 591 Pa. 196, 916 A.2d 553, 561 n. 13 (2007).

 As our analysis involves interpreting a provision of the Insurance Department Act, we necessarily begin by considering the Statutory Construction Act of 1972. 1 Pa.C.S. § 1501 *et seq.* The Statutory Construction Act directs that the object of all interpretation and construction of statutes is to ascertain and effectuate the legislature's intent. 1 Pa.C.S. § 1921(a); *Chanceford Aviation Properties, LLP v. Chanceford Twp. Bd. of Supervisors*, 592 Pa. 100, 923 A.2d 1099, 1104 (2007). Generally, the best indicator of legislative intent is the plain language of the statute. *Walker v. Eleby*, 577 Pa. 104, 842 A.2d 389, 400 (2004). In construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a). When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *Commonwealth v. Conklin*, 587 Pa. 140, 897 A.2d 1168, 1175 (2006). Only "[w]hen the words of the statute are not explicit" may a court resort to the rules of statutory construction, including those provided in 1 Pa.C.S. § 1921(c).[14] *Chanceford*, 923 A.2d at 1104. A statute is

---

14. The factors in § 1921(c) are:
 (1) The occasion and necessity for the statute.
 (2) The circumstances under which it was enacted.
 (3) The mischief to be remedied.
 (4) The object to be attained.
 (5) The former law, if any, including other statutes upon the same or similar subjects.
 (6) The consequences of a particular interpretation.
 (7) The contemporaneous legislative history.
 (8) Legislative and administrative interpretations of such statute.
 1 Pa.C.S. § 1921(c).

ambiguous when there are at least two reasonable interpretations of the text under review. *See Delaware Cnty. v. First Union Corp.*, 605 Pa. 547, 992 A.2d 112, 118 (2010). Moreover, "[s]tatutes in pari materia shall be construed together, if possible, as one statute." 1 Pa.C.S. § 1932. Finally, it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

Pursuant to Section 221.20(d) of the Insurance Department Act, once an order of liquidation is issued, the rights and liabilities of an insurer, its creditors, policyholders and all other persons interested in the insurer's assets are fixed as of the filing of the petition for liquidation of the insurer, except as provided for in Section 221.21, *inter alia.* 40 P.S. 221.20(d). Section 221.21, entitled "Continuance of Coverage," extends coverage on behalf of policyholders whose insurer enters liquidation for a defined period after the entry of the liquidation order. Section 221.21 reads in full:

> All insurance in effect at the time of issuance [of] an order of liquidation shall continue in force only with respect to the risks in effect, at that time (i) for a period of thirty days from the date of entry of the liquidation order; (ii) until the normal expiration of the policy coverage; (iii) until the insured has replaced the insurance coverage with equivalent insurance in another insurer or otherwise terminated the policy; or (iv) until the liquidator has effected a transfer of the policy obligation pursuant to section 523(8), whichever time is less.

40 P.S. § 221.21.

Warrantech's strongest argument is that Section 221.21 only applies to insurance policies with active policy periods at the time of liquidation, and that the Reliance Policies, which were cancelled in 2000, are exempt from the requirements of the statute. As Warrantech observes, the prefatory language in Section 221.21 reads "[a]ll insurance in effect at the time of issuance of an order of liquidation...." Notably, the Insurance Department Act does not define "[a]ll insurance in effect," nor does the phrase appear anywhere else

in the statute. While Warrantech construes the phrase "[a]ll insurance in effect" as only pertaining to insurance policies within their "active" policy periods,[15] the Liquidator contends that the phrase refers to any insurance policy that continues to provide coverage to its policyholders, regardless of whether the policy period of the subject insurance policy is active at the time of the insurer's liquidation. Because both interpretations are plausible under the plain language of Section 221.21, we turn to the rules of statutory construction to ascertain and effectuate the intent of the General Assembly with respect to the phrase "[a]ll insurance in effect."

In so doing, we recognize that "[s]tatutes in pari materia shall be construed together, if possible, as one statute." 1 Pa.C.S. § 1932. Accordingly, we conclude that Section 221.21 should be read in pari materia with Section 221.20(d). *See* 1 Pa.C.S. § 1932. Both provisions address the rights of policyholders whose insurers enter liquidation under Article V of the Insurance Department Act. Moreover, Section 221.20(d) cross-references Section 221.21, as an exception to the rule it announces.

When the two provisions are read together, the purpose behind Section 221.21, and correspondingly, the meaning of the phrase "[a]ll insurance in effect," becomes evident. As noted above, Section 221.20(d) provides that the rights and liabilities of an insurer entering liquidation and of "its creditors, policyholders ... and all other persons interested in its estate shall become fixed as of the date of filing of the petition for liquidation." 40 P.S. 221.20(d).[16] Section 221.21 relaxes the rule announced in Section 221.20(d) (fixing the rights and

---

15. Meaning, simply, a finite, ascertainable period of time for which an insured has paid a premium and during which an insurer has correspondingly agreed to pay claims in accord with the parties' insurance agreement.

16. Section 221.20(d) reads in relevant part:

 Upon issuance of the order [of liquidation], the rights and liabilities of any such insurer [entering liquidation] and of its creditors, policyholders ... and all other persons interested in its estate shall become fixed as of the date of filing of the petition for liquidation, except as provided in sections [221.21] and [221.39].
 40 P.S. § 221.20(d).

liabilities of an insurer entering liquidation) by providing policyholders, whose insurance coverage would otherwise be terminated as of the date of the filing of the petition for liquidation, a thirty-day window to acquire replacement insurance. During this thirty-day period, the policyholders retain coverage for "risks in effect" at the time of liquidation. *See* 40 P.S. § 221.21.[17]

Warrantech's argument that Section 221.21 only applies to insurance policies with active policy periods based on the phrase "[a]ll insurance in effect" is incongruous with the overriding purpose of Sections 221.20(d) and 221.21, which is to provide a limited exception for insureds facing the otherwise harsh finality of standard liquidation proceedings. Given the interplay between Sections 221.20(d) and 221.21, it is apparent that the General Assembly adopted Section 221.21 to allow insureds the opportunity to avoid gaps in coverage when their insurers unexpectedly enter liquidation. Tellingly, Section 221.21 is titled "Continuance of Coverage." But for Section 221.21 providing policyholders of insurers entering liquidation a thirty-day window to acquire replacement insurance, Section 221.20(d) would cut off coverage to every policyholder whose insurer enters liquidation as of the date the petition for liquidation is filed, without notice and an opportunity to seek replacement coverage.

Therefore, rather than reading "[a]ll insurance in effect" to mean only insurance policies with active policy periods at the time of liquidation, the better interpretation is to read the phrase as a reference to the same policyholders identified in Section 221.20(d) who face the unforeseen termination of their insurance coverage on account of their insurer's liquidation. For these reasons, we conclude that the Liquidator advances

17. We acknowledge that under the plain language of Section 221.21, thirty days represents the longest period of time after a liquidation order is issued that a policyholder may retain coverage with respect to risks in effect at the time of liquidation. Specifically, coverage for risks in effect may terminate sooner (1) with the normal expiration of the policy coverage, (2) in the event the insured terminates the policy or procures replacement insurance, or (3) when the liquidator transfers the policy obligation pursuant to Section 221.23. *See id.*

the correct interpretation of the prefatory language in Section 221.21, namely, that the phrase "[a]ll insurance in effect" means any insurance policy that continues to provide coverage to its policyholders as of the date the Commonwealth Court enters an order of liquidation.

■ Next, we turn to Warrantech's argument that, notwithstanding Section 221.21, Reliance remains liable for consumer claims arising from product breakdowns that occurred after November 2, 2001, because coverage for these claims was triggered prior to liquidation when Warrantech issued service contracts back in 1999 and 2000. First, Warrantech's attempt to analogize this case to the line of cases utilizing the "multiple trigger" theory of insurer liability within the context of asbestos bodily injury claims is misguided. While this Court applied the "multiple trigger" theory to asbestos-related diseases in *J.H. France,* we have not utilized the theory outside of the toxic tort scenario. *See J.H. France,* 534 Pa. 29, 626 A.2d 502 (1993); *Consulting Eng'rs, Inc. v. Ins. Co. of North Am.,* 710 A.2d 82, 87 (Pa.Super.1998) *aff'd,* 560 Pa. 247, 743 A.2d 911 (2000).[18] The insurance policies at issue merely involve claims arising from product breakdowns occurring under standard service contracts, which is entirely distinguishable from the unusual and prolonged etiology of asbestos-related diseases or similar toxic tort scenarios.

■ Second, we reject Warrantech's contention that coverage under any and every policy of insurance must be triggered by an event that occurs during the applicable policy period. In determining whether an event triggers coverage under a policy of insurance we look to the intent of the parties as manifested by the language of the specific insurance policy. *Kvaerner Metals Div.,* 908 A.2d at 896–97; *401 Fourth St.,* 879 A.2d at 171; *Minnesota Fire & Cas. Co. v. Greenfield,* 579 Pa. 333, 855 A.2d 854, 861 (2004).

18. We acknowledge that *Pa. Nat'l Mutual Ins. Co. v. St. John,* 86 MAP 2012, J–37–2013, is currently pending before this Court, raising the question of whether the multiple trigger theory should be extended to "cases presenting continuous, progressive 'property damage.' " 617 Pa. 559, 53 A.3d 1316 (2012) (order).

Turning to the language of the Reliance Policies, we find that the triggering event is a claim made after a product breakdown under one of Warrantech's service contracts, as opposed to the creation of these contracts in 1999 or 2000. The Reliance Policies expressly require Reliance to indemnify Warrantech for "all sums which [Warrantech] shall become legally obligated to pay" under the service contracts issued in 1999 and 2000. *See supra* note 4. Because Warrantech assumes obligations under the service contracts in the event of claims from product breakdowns only, these product breakdowns and corresponding claims serve as the triggering event for the Reliance Policies. Accordingly, the language in Section 221.21 terminating coverage for all "risks in effect" under a policy of insurance no more than thirty days after liquidation operates to cut off coverage under the Reliance Policies for claims arising from product breakdowns occurring after November 2, 2001.

We further dismiss Warrantech's argument that the "Effect of Cancellation" clause in the Reliance Policies trumps Section 221.21 by extending coverage to claims for product breakdowns under the service contracts in perpetuity. Notwithstanding the principle that the meaning of an insurance contract is generally determined from the language of the policy, "stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws." *Prudential Prop. & Cas. Ins. Co. v. Colbert,* 572 Pa. 82, 813 A.2d 747, 750 (2002) (internal citation omitted). Accordingly, Section 221.21 applies to the Reliance Policies, notwithstanding the "Effect of Cancellation" clause, just as it applies to every other insurance policy with risks in effect at the time the Commonwealth Court issues an order of liquidation.

Finally, while we are sympathetic to Warrantech's complaint that the Liquidator's construction of Section 221.21 works an injustice by requiring policyholders, such as itself, to

purchase replacement insurance when their previous policies were purchased at great cost, the argument lacks persuasive legal merit. As this Court has recognized, barring claims against insolvent insurers after a certain date, while it may work hardships on certain parties, is necessary to permit the Liquidator to manage effectively existing liabilities for the ultimate benefit of all claimants of insolvent insurers. *See Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 531 Pa. 598, 614 A.2d 1086, 1098 (1992). In Sections 221.20(d) and 221.21, the General Assembly struck a balance between the interests of policyholders, creditors and the public generally by fixing the rights of all parties with an interest in the estate of an insurer entering liquidation as of the date the petition for liquidation is filed, while making an exception for insurance policies with risks in effect at the time of liquidation by extending coverage for no more than thirty days to provide affected policyholders an opportunity to purchase replacement insurance. The fact that Warrantech cannot benefit from the Section 221.21 legislatively created exception does not justify the formation of a new exclusion for Warrantech which the legislature did not provide. This Court is constrained to uphold the General Assembly's legislative judgment, notwithstanding the particular hardships imposed on Warrantech in this case.

In light of the foregoing, we conclude that Section 221.21 of the Insurance Department Act operates to terminate all claims against the estate of an insurer by its policyholders no later than thirty days after the filing of a petition for liquidation with respect to "risks in effect" at the time the Commonwealth Court issues an order of liquidation, regardless of whether the claims are based on insurance policies with active policy periods at the time of liquidation. The order of the Commonwealth Court finding that Section 221.21 relieves Reliance of all liability to indemnify Warrantech for claims arising from product breakdowns under the service contracts that occurred after November 2, 2001 is therefore affirmed. Jurisdiction is relinquished.

Chief Justice CASTILLE, Justices EAKIN, TODD, McCAFFERY and STEVENS join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

I agree with the majority insofar as it concludes that the phrases "[a]ll insurance in effect" and "risks in effect," as they appear in Section 521 of the Insurance Department Act, *see* 40 P.S. § 221.21, include risks arising under Reliance's insurance policies cancelled prior to liquidation, where the terms of the coverage itself were still in effect as of October 3, 2001. I write separately because, in my view, it does not follow that claims falling outside the 30–day window must be valued at zero for distribution purposes, as indicated in the notices of determination, *see, e.g.,* R.R. 32a, and affirmed by the referee, *see id.* at 143a–160a.

Section 521 only delays, for certain types of insurance claims, the date on which the assets and liabilities of the insurer are otherwise "fixed." 40 P.S. § 221.20(d). It does so by changing that date from the filing of the liquidation petition to thirty days after the liquidation order. Under my reading of the Act, this "fixing" of assets and liabilities pertains to the makeup of the estate to be liquidated and distributed to claimants. Prior thereto, the insurance policies continue in force *as insurance.* *See* 40 P.S. § 221.21 (providing that "insurance in effect ... shall continue in force" for the stated time period).

More to the point, I am unable to discern anything within the statutory liquidation and distribution scheme that would prevent proofs of claim (POCs) based on losses that fall outside Section 521's time window from being resolved via the ordinary distribution process undertaken by the liquidator. Indeed, to hold that POCs for such losses must automatically be assigned a zero value would run directly counter to Article V's stated purpose to equitably apportion any unavoidable loss and thereby protect insureds, creditors, and the public generally (for example, consumers who purchased service contracts issued by Warrantech). *See* 40 P.S. § 221.1(c); *Sheppard v.*

*Old Heritage Mut. Ins. Co.,* 492 Pa. 581, 589, 425 A.2d 304, 307–08 (1980).

As applied here, the POCs have a priority level of (b) because they are "claims under policies for losses," 40 P.S. § 221.44(b)—that is, they request reimbursement of payments Warrantech has made under the service contracts covered by insurance policies issued by Reliance to Warrantech. See *In re Objection of Warrantech Consumer Prod. Servs., Inc.,* No. 269 M.D.2001, slip op. at 2, 11–12 (Pa. Cmwlth. Sept. 27, 2010) (single judge opinion by Leadbetter, P.J.). It would make little sense to read the Act as mandating that claims against the estate falling into priority level (c) and below may be paid out from the estate's assets, whereas claims (such as those at issue here) at priority level (b) have no value and cannot be paid out at all, simply because, under Section 521, they were no longer insurance claims *as such. See* 40 P.S. § 221.44 ("Every claim in each class shall be paid in full ... before the members of the next class receive any payment."); *see also id.* § 221.46 ("[T]he liquidator shall pay distributions in a manner that will assure the proper recognition of priorities.").[1] In this regard, the parties have not suggested any basis to believe that the claims with priority level (a) will deplete the estate's assets.

Notwithstanding the above, in the present appeal Warrantech has taken an all-or-nothing approach, opting to argue that its insurance coverage as such remained in effect after the thirty-day window because the policies under which that coverage came into being had been cancelled well before the date of the liquidation order. *See* Brief for Appellant at 9 ("The Commonwealth Court's resolution of the Cancellation Issue is

1. Indeed, I find the liquidator's position in this litigation to lack substantial consistency. When the POCs were initially filed, the liquidator assigned them a priority level of (e), but refrained from immediately assigning a value in view of the possibility that the estate would have been depleted before reaching claims at that level. It follows that the liquidator believed there was some chance, however small, that the POCs might ultimately have a non-zero value. When, however, the Commonwealth Court ordered that the claims be elevated to level (b), the liquidator assigned them an automatic value of zero based on Section 521.

the sole issue in this appeal."). As noted, I agree with the majority that Warrantech's argument in this regard cannot prevail. Since Warrantech has not forwarded any alternative basis to value the claims at a non-zero figure, and has not requested relief in the form of a remand to the liquidator to value the claims in the ordinary course of the liquidation, I ultimately agree with the majority that the order of the Commonwealth Court confirming a zero value must be affirmed.