THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Penn Treaty Network America : 
Insurance Company (In Liquidation) : No. 1 PEN 2009
:
In Re: American Network Insurance : No. 1 ANI 2009
Company (In Liquidation) : Submitted: November 17, 2021


BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE ANDREW J. CROMPTON, Judge


OPINION
BY JUDGE LEAVITT                                    FILED: December 22, 2021


Before the Court are exceptions filed by the Statutory Liquidator to an

opinion and order issued by a three-judge panel of this Court on July 9, 2021, in the

ongoing liquidation of long-term care insurer Penn Treaty Network America

Insurance Company (PTNA) and its subsidiary American Network Insurance

Company (ANIC) (collectively, the Companies). *In Re: Penn Treaty Network*

*America Insurance Company (In Liquidation)* (Pa. Cmwlth., Nos. 1 PEN 2009, 1

ANI 2009, filed July 9, 2021) (*Panel Opinion*).[1]  The panel denied the Liquidator's

application for a declaration that she is authorized under Article V of The Insurance

Department Act of 1921 (Article V)[2] to allocate assets from the Companies' estates

to a captive insurer, created by the Liquidator, to cover policyholder claims for

---

[1] The Panel Opinion is published at *In Re: Penn Treaty Network America Insurance Company (In Liquidation)*, 259 A.3d 1028 (Pa. Cmwlth. 2021).  All references herein are to the Court's slip opinion.

[2] Act of May 17, 1921, P.L. 789, *as amended*, added by the Act of December 14, 1977, P.L. 280, 40 P.S. §§221.1 – 221.63.

benefits that exceed applicable statutory guaranty association limits and will accrue more than 30 days after the Companies' policies terminated by virtue of the Companies' liquidation. The panel held that the Liquidator's proposal lacks support in Article V and the enabling act for the Pennsylvania Life and Health Insurance Guaranty Association, codified in Article XVII of The Insurance Company Law of 1921 (PLHIGA Act).[3] Presently, the Liquidator argues that the panel erred in its application of the relevant law and asks the Court *en banc* to grant her application. Upon review, we overrule the exceptions and reaffirm the panel's decision.

The underlying facts and procedural history of this matter are set forth in the Panel Opinion and incorporated herein by reference.[4] For purposes of deciding the Liquidator's exceptions, we provide the following brief summary.

Pursuant to the Court's March 2017 liquidation orders, the Companies' policy obligations were transferred to guaranty associations to continue coverage and to pay claims up to the limits set in the applicable state law. Because some policyholders will reach statutory guaranty association limits before reaching the limits provided in the policies issued by the Companies, the Liquidator took steps to create a way to provide coverage for claims in excess of guaranty association limits. These claims are termed the Non-Guaranty Association (GA) Policy Benefits. To that end, the Liquidator entered into a partial assumption reinsurance agreement with a captive insurer, Penn Treaty Plus, Inc. (Captive), during the 30-day period following entry of the liquidation orders. Under this partial assumption reinsurance

---

[3] Act of May 17, 1921, P.L. 682, *as amended*, added by the Act of December 18, 1992, P.L. 1519, 40 P.S. §§991.1701 – .1717.

[4] Additional information on the history of the Companies and the conditions that led to their placement in rehabilitation is available in the Court's opinion in *Consedine v. Penn Treaty Network America Insurance Co.*, 63 A.3d 368 (Pa. Cmwlth. 2012), *affirmed*, *In Re Penn Treaty Network America Insurance Company in Rehabilitation*, 119 A.3d 313 (Pa. 2015).

2

agreement, the Captive will provide coverage excess of guaranty association coverage and pay approximately 10% of a policyholder's claim for Non-GA Policy Benefits.

The Liquidator sought authorization from this Court to distribute some of the Companies' assets to the Captive for this purpose. Based on the information available as of June 30, 2019, and using a gross premium reserve methodology, the Liquidator proposed to allocate approximately 61.2% of PTNA's available assets ($211.6 million) and 67.3% of ANIC's available assets ($95.4 million) to the guaranty associations and approximately 38.8% of PTNA's available assets ($117.3 million) and 32.7% of ANIC's available assets ($45.4 million) to the Captive. *Panel Opinion* at 11. Under this proposed allocation of the Companies' assets, the Liquidator estimated that the Captive will be able to cover approximately 10% of the Non-GA Policy Benefit claims. The Liquidator also estimated that approximately 10% of the claims paid by the guaranty associations will be funded by estate assets.

In support of her application, the Liquidator asserted that policyholder claims for Non-GA Policy Benefits are entitled to be paid even where the loss arises after the policy has terminated by virtue of the Companies' liquidation. She proposed to accept and value policyholder claims for Non-GA Policy Benefits under one of two legal theories. First, the Liquidator argued that she can pay Non-GA Policy Benefits as claims under active policies of insurance, *i.e.*, the coverage provided by the guaranty associations and the coverage to be provided by the Captive. Second, in the alternative, assuming the Companies' policies were terminated by operation of law under Article V, the Liquidator argued that she can pay the Non-GA Policy Benefits as claims for breach of contract, which occurred

3

when the policies were terminated. The Liquidator argued that her plan comports with the unifying purpose of the governing statutes, *i.e.*, Article V and the PLHIGA Act, because it is designed to minimize the harm caused to policyholders by a liquidation.

Intervenors Anthem, Inc. and UnitedHealthcare Insurance Company (Health Insurers), which are members of PLHIGA and other life and health guaranty associations, opposed the Liquidator's application. They did not write long-term care insurance, but they will be required to pay assessments to the guaranty associations. The cost to guaranty associations to continue long-term care insurance coverage for the former policyholders of the Companies, in excess of the premiums they will collect from those policyholders and assets they will receive from the Companies' estates, totals approximately $2 billion. *Panel Opinion* at 9. The Health Insurers will be responsible for covering this $2 billion funding gap, which they will pass on to their policyholders through surcharges and to taxpayers through premium offsets in states where such offsets are allowed. The Health Insurers argued that the Liquidator's proposal to create a facility to pay claims in excess of those paid by guaranty associations lacks a statutory foundation. They asserted that the estate assets that the Liquidator proposes to distribute to the Captive are owed to the guaranty associations.

Following oral argument in March of 2021, the panel held that the Liquidator's proposal to use estate assets to set up an excess coverage insurer departed from Article V and the PLHIGA Act. The Liquidator has filed 12

4

exceptions to the panel's decision,[5] which she consolidated in her brief into six issues. We consider these issues *seriatim*.[6]

[5] Specifically, the Liquidator takes exception to:

1. The Court's finding that the Liquidator may not pay claims for Non-GA Policy Benefits.

2. The Court's decision to permit the Health Insurers to intervene and oppose the Application Regarding Non-GA Policy Benefits.

3. The Court's finding regarding the scope of transfers permitted by Section 523(8) of Article V, 40 P.S. §221.23(8), including that the Liquidator could not establish a captive insurer to assume policy liabilities.

4. The Court's finding that paying policyholder claims through more than one source of funds impermissibly severs those policies.

5. The Court's disregard of controlling law making all policyholder claims Class (b) claims, regardless of when those claims accrue or how they are paid.

6. The Court's finding that the Liquidator could not value policyholder claims on a breach of contract basis.

7. The Court's finding that policyholders have no claims against a liquidation estate for losses occurring more than 30 days after the liquidation order.

8. The Court's finding that policyholder claims for losses occurring more than 30 days after the liquidation order must be given a zero valuation under *Warrantech Consumer Products Services, Inc. v. Reliance Insurance Company in Liquidation*, 96 A.3d 346 (Pa. 2014).

9. The Court's application of Article V, the PLHIGA Act, the National Association of Insurance Commissioners (NAIC) Model Act, the NAIC Receivership Handbook, and the Insurer Receivership Model Act (IRMA).

10. The Court's finding that state guaranty associations have a claim to estate assets exceeding the value of their administrative claims and their subrogated interest in policyholder claims.

11. The Court's finding that the Liquidator cannot rely on equitable principles when performing her statutory duties.

12. The Court's finding that common law pre-dating the current insolvency statutes is no longer valid.

[6] By analogy to the procedure followed in tax appeals, exceptions filed to a final order of this Court have the effect of an order granting reconsideration. *Myers v. Commonwealth*, 260 A.3d 349, 354 n.6 (Pa. Cmwlth. 2021). Our standard of review is *de novo*. *Id*. Stipulations of fact are binding on both the parties and the Court; however, the Court may draw its own legal conclusions. *Id*. *See*

The Liquidator first argues that Pennsylvania law permits her to use estate assets to set up a mechanism for the payment of Non-GA Policy Benefits, and the panel erred in holding otherwise. Subsumed in that issue is whether policyholders' claims for Non-GA Policy Benefits should be assigned to class (b) under Section 544 of Article V, 40 P.S. §221.44,[7] as "claims under policies for losses" on the theory that the policies are still alive but with the guaranty associations serving as the "insurers." Alternatively, the Liquidator argues that policyholders have breach of contract claims against the Companies' estates for the loss of their policies, which claims were allowed in the pre-guaranty association regime to prevent shareholders from receiving all of the assets.

Central to the Liquidator's position is her argument that under Section 544(b) of Article V, policyholders have class (b) claims against the Companies'

---

*also* PA. R.A.P. 2543 and Note (standards governing reargument include the Court's interest in correcting misapprehension of material fact or controlling law).

[7] Section 544 of Article V provides, in pertinent part:

> The order of distribution of claims from the insurer's estate shall be in accordance with the order in which each class of claims is herein set forth. Every claim in each class shall be paid in full or adequate funds retained for such payment before the members of the next class receive any payment. No subclasses shall be established within any class.
>
> * * *
>
> (b) *All claims under policies for losses wherever incurred*, including third party claims, and all claims against the insurer for liability for bodily injury or for injury to or destruction of tangible property which are not under policies, shall have the next priority. All claims under life insurance and annuity policies, whether for death proceeds, annuity proceeds, or investment values shall be treated as loss claims. That portion of any loss, indemnification for which is provided by other benefits or advantages recovered by the claimant, shall not be included in this class, other than benefits or advantages recovered or recoverable in discharge of familial obligations of support or by way of succession at death or as proceeds of life insurance, or as gratuities. No payment made by an employer to his employe shall be treated as a gratuity.

40 P.S. §221.44(b) (emphasis added).

6

estates notwithstanding the continuation of their coverage by guaranty associations. Stated otherwise, policyholders are entitled to coverage in excess of guaranty association coverage, either by a transfer of policy obligations to the Captive or by direct payments from the estate for Non-GA Policy Benefit claims. We disagree with the Liquidator's premise that policyholders have class (b) claims against the Companies' estates.

As the panel explained, Section 520(d) of Article V, 40 P.S. §221.20, fixes the rights and liabilities of an insolvent insurer and its creditors upon the issuance of a liquidation order, except as provided in Section 521 of Article V, 40 P.S. §221.21. *See Panel Opinion* at 23-24. Under Section 521, policies remain in force for no more than 30 days after entry of the liquidation order. Policy claims that accrue during that 30-day period are allowed, but claims accruing after the 30-day period are not allowed against the estate. Necessarily, the Non-GA Policy Benefit claims will accrue after the 30-day period has expired. Those claims are barred by the plain text of Sections 520 and 521 and the Pennsylvania Supreme Court's construction of those provisions in *Warrantech Consumer Products Services, Inc. v. Reliance Insurance Company in Liquidation*, 96 A.3d 346 (Pa. 2014). Further, Sections 520 and 521 terminate all insurance policies, regardless of the type of insurance coverage. The Liquidator's attempt to distinguish *Warrantech* on the basis that it involved a property and casualty insurer, whereas the Companies were life insurers, is unavailing.

Equally unpersuasive is the Liquidator's alternative argument that the termination of a policy mandated by Sections 520 and 521 of Article V gives rise to a breach of contract claim entitled to class (b) priority. Section 544(b) assigns class (b) priority to "*claims under policies* for losses wherever incurred." 40 P.S.

7

§221.44(b) (emphasis added). We agree with the panel's conclusion that Section 544(b) accords priority to claims for benefits under the terms of the policies, not for the loss of the policy itself. *See Panel Opinion* at 25. Damages for breach of contract claims would be general creditor claims entitled to class (e) priority, not class (b). *Id.* Even assuming, *arguendo*, that breach of contract claims could be assigned class (b) priority by virtue of the fact that they are asserted by policyholders, they would have to be given a zero valuation under *Warrantech* because the insurer's failure to perform due to insolvency is not a claim under a policy for "losses wherever incurred" referred to in Section 544(b).

The Liquidator next argues that the panel erred in barring the Liquidator from transferring policy obligations and corresponding assets to the Captive. In its analysis, the panel explained that the Liquidator's authority to transfer policies of an insolvent insurer to another solvent assuming insurer assumes a transfer of the entire insurance policy. There is no authority in Section 523(8) of Article V, 40 P.S. §221.23(8), to divide up the insurance policy of an insolvent insurer and send part to a guaranty association and the remainder to an excess insurer.[8] We adopt the

---

[8] Notably, the Insurer Receivership Model Act (IRMA) provides a statutory liquidator with the tools proposed to be used by the Liquidator in creating the Captive. IRMA states that "[p]olicies of … long term care … covered by a guaranty association *or portions of such policies* covered by one or more guaranty associations … shall continue in force … to the extent necessary to permit the guaranty associations to discharge their statutory obligations." IRMA §502.D (emphasis added) (available online at https://content.naic.org/sites/default/files/inline-files/MDL-555.pdf (last visited December 1, 2021)). IRMA provides another alternative. It states that "[p]olicies of … long term care …, *or portions of such policies*, not covered by one or more guaranty associations shall terminate" at 30 days from the date of entry of the liquidation order, except to the extent the receivership court approves the use of estate assets "for the purpose of continuing the contracts or coverage by transferring them to an assuming reinsurer." *Id.* (emphasis added). Lacking from Article V is any authority for the Liquidator to send "portions" of the Companies' policies to the Captive or for this Court to approve the use of estate assets to effect such a transfer. IRMA has not been enacted by the Pennsylvania General Assembly.

8

panel's analysis of this issue, which is set forth in the Panel Opinion on pages 33 through 34 and footnote 29 on page 39.

Next, the Liquidator argues that the panel disregarded the controlling law that all policyholder claims are class (b) claims, regardless of when those claims accrue or how they are paid. As discussed above with regard to the Liquidator's first issue, the panel did not disregard controlling law; the Liquidator simply disagrees with the panel's view of what constitutes controlling law. The panel concluded that a Non-GA Policy Benefit claim, or any policy claim against the Companies' estates after the termination of the policy, is barred by Sections 520 and 521 of Article V, 40 P.S. §§221.20, 221.21. This was firmly established by the Pennsylvania Supreme Court's construction of those provisions in *Warrantech*, 96 A.3d 346. *See Panel Opinion* at 23-24. Simply, the estate of an insolvent insurer cannot be used to pay claims that arise after the Companies' policies have terminated. Further, any claim for breach of contract caused by the termination of a policy is not a claim for a loss under a policy within the meaning of Section 544(b) of Article V. *Id*. at 25. Again, we adopt the panel's analysis of these issues.

The Liquidator next argues that the panel erred in concluding that guaranty associations have a class (b) claim exceeding the value of their administrative expense claims and what the Liquidator terms the associations' "subrogated interest" in policyholder claims. In framing this exception, the Liquidator is not referring to an insurer's traditional subrogation interest in, for example, an insured's tort recovery against a third party. The Liquidator is really referring to the guaranty associations' interest in estate assets that is derived from the assignment of policyholder claims against the insolvent insurer estate to guaranty associations, which assignment occurs with the transfer of policy obligations to the

9

guaranty associations. The Liquidator believes the associations are entitled to no more than that assigned interest. The panel rejected that argument, concluding that Article V and the PLHIGA Act, together, give the associations a direct right to estate assets to fund their obligation to continue coverage for policyholders. That right is independent of the associations' interest in estate assets that they derive as assignees of the policyholders. In so holding, the panel analyzed the relevant provisions of Article V and the PLHIGA Act, *see Panel Opinion* at 26-31, and we adopt that analysis.

In advancing her argument that the panel erred in its analysis of the scope and priority of the guaranty associations' right to estate assets, the Liquidator cites a report issued in 2016 by the National Organization of Life and Health Insurance Guaranty Associations (NOLHGA) entitled "Consumer Protection Comparison: The Federal Pension System and the State Insurance System." *See* Liquidator Brief, Exhibit D at Exhibit J (NOLHGA Report).[9] The Liquidator cites a statement in the report that the guaranty association system "gives each policyholder the benefit of an 'A plus B' approach, allowing a policyholder with benefits exceeding [guaranty association] coverage levels to receive both (A) the [guaranty association] coverage level of benefits; and (B) benefits supported by the policyholder's share as a priority claimant of the insurer's remaining assets, which are usually substantial." NOLHGA Report at 21.

The Liquidator's reliance on the NOLHGA Report is unavailing. NOLHGA has intervened in this stage of the proceeding to support the panel's construction and application of Article V and the PLHIGA Act. In short, NOLHGA agrees with the panel's conclusion that because the guaranty associations'

_____

[9]The NOLHGA Report is also available online at https://www.nolhga.com/resource/code/file.cfm?ID=2559 (last visited December 21, 2021).

obligations are grounded in statute, they have a vested right to estate assets independent of their status as assignees of policyholder claims. The PLHIGA Act recognizes that in addition to the guaranty associations' claim to the assets attributable to covered policies, they have statutory and common law subrogation rights; the latter is subtracted from the former to prevent double recovery. The fact that the guaranty associations have subrogation claims assigned to class (b) does not prevent them from having independent statutory claims for assets attributable to covered policies as class (b) claims.

As for the NOLHGA Report, NOLHGA explains that the methodology followed therein refutes the Liquidator's position and is consistent with the panel's analysis. The report provides a high-level overview of the guaranty association system with references to the National Association of Insurance Commissioners Life and Health Insurance Guaranty Association Model Act (NAIC Model Act).[10] It does not discuss any particular state law and does not purport to analyze Pennsylvania law. The report also does not state that guaranty association claims are limited to subrogation rights as the Liquidator suggests. NOLHGA points out that, consistent with its position here, the report states that "[e]ach guaranty association is also entitled to assets from each insolvent insurer allocable to the annuity and insurance obligations the guaranty association protects." NOLHGA Report, Endnote 10 (citing NAIC Model Act §§8(K) and 14(C)). As such, the statements in the NOLHGA Report affirm, not diminish, guaranty association priority in the insolvent insurer's estate. NOLHGA asserts that the Liquidator's citation to an out-of-context portion of the report in no way undermines the panel's legal analysis.

---

[10] The NAIC Model Act is available online at https://content.naic.org/sites/default/files/inline-files/MDL-520.pdf (last visited December 21, 2021).

11

The Liquidator next contends that the panel erred in barring the Liquidator from employing equitable principles to perform her statutory duties, which she believes necessary to the fair allocation of assets among similarly situated policyholders subject to different guaranty association limits. The panel explained that the liquidation of an insolvent insurer follows a rigid procedure and does not confer discretion upon the Liquidator to disburse the assets of the estate in the way the Liquidator thinks is equitable. *See Panel Opinion* at 22-23, 27. We adopt that analysis.

Finally, the Liquidator contends that the Court erred in granting the Health Insurers limited intervention on the Non-GA Policy Benefits application. This issue was not addressed by the panel.[11] The Liquidator argues that the Health Insurers lack standing. Assuming the Health Insurers' assessment burden will be increased if estate assets are allocated to the Captive to cover Non-GA Policy Benefit claims, the Health Insurers cannot presently calculate the harm, so it is too remote. Further, their harm is not substantial because they can mitigate their exposure through premium tax offsets in many states. The Health Insurers counter that it is too late to challenge their intervention, given their active participation in the receivership proceeding since 2013.[12] Assuming the Liquidator's objection is

---

[11] By way of further background, the Health Insurers filed their application for limited intervention on February 28, 2017, in anticipation of the Liquidator proposing to use estate assets to fund a mechanism for covering Non-GA Policy Benefit claims. The Liquidator opposed the application, and the issue was fully briefed. On March 20, 2019, the Liquidator filed the instant Application for Declaration Regarding Non-GA Policy Benefits, and therein reasserted her opposition to the Health Insurers' intervention. Two days later, on March 22, 2019, the Court issued its order granting the Health Insurers' application for limited intervention. The Liquidator did not seek reconsideration of that order or request permission to appeal.

[12] The Health Insurers' involvement began in August 2013 when they filed formal comments on the initial proposed rehabilitation plan for the Companies. At the Court's invitation, the Health Insurers participated in the Multi-Party Rehabilitation Group established by the Court during the

12

timely, the Health Insurers posit that they have a "direct and substantial interest in the administration" of the Companies' estate. PA. R.A.P. 3775(a).

To begin, an order granting intervention is interlocutory and unappealable except by permission. *See*, *e.g.*, *Step Plan Services, Inc. v. Koresko*, 12 A.3d 401, 417 n.4 (Pa. Super. 2010) ("orders allowing intervenor status during ongoing disputes are ordinarily interlocutory and not immediately appealable"). Thus, we decline to hold that the Liquidator has waived her challenge to the March 22, 2019, order granting the Health Insurers limited intervenor status because she did not file an immediate appeal of that order.

Even so, we conclude that the Health Insurers satisfy the standard for limited intervention in a formal proceeding against an insolvent insurer. Pursuant to Pennsylvania Rule of Appellate Procedure 3775(a), the Health Insurers had to establish a "direct and substantial interest in the administration of the insurer's business or estate."[13] The Liquidator proposes to allocate more than $162 million to

---

rehabilitation proceeding. They participated in the trial on the petition to convert the rehabilitation to liquidation and the negotiations that culminated in a settlement of that petition.

[13] Pennsylvania Rule of Appellate Procedure 3775 provides, in relevant part:

> (a) Intervention. A person not named as a respondent in a formal proceeding who has a direct and substantial interest in the administration of the insurer's business or estate may request leave of court to intervene.
>
> * * *
>
> (c) Action on application ….
>
> * * *
>
> (2) Limited intervention. When the applicant's interest involves a discrete controversy relating to the administration of the insurer's business or estate, the Court may grant the applicant limited intervention to participate as a party in the discrete controversy. The limited intervenor shall not be placed upon the master service list unless the Court orders otherwise.

PA. R.A.P. 3775(a), (c)(2).

the Captive, which would result in an increase in guaranty association assessments against the Health Insurers by several hundred million dollars. Such assessments will occur soon in time after the allocation. The Health Insurers' pecuniary interest in the Liquidator's proposed allocation of estate assets is direct and substantial. What is more, the interests of the Health Insurers and the guaranty associations are not aligned; the associations have an interest in discharging their statutory obligations to an insolvent insurer's policyholders irrespective of the assessments that must be imposed upon their member insurers. The associations pass through 100% of the cost to the member insurers and, therefore, are not concerned with the financial sting of the assessments. In short, we discern no error in the Court's grant of limited intervention to the Health Insurers.

For all of the foregoing reasons, we overrule the exceptions of the Liquidator to the panel's July 9, 2021, opinion and order.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Cohn Jubelirer and Judge Fizzano Cannon did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Penn Treaty Network America : 
Insurance Company (In Liquidation) : No. 1 PEN 2009
 : 
In Re: American Network Insurance : No. 1 ANI 2009
Company (In Liquidation) : 

# **O R D E R**

AND NOW, this 22nd day of December, 2021, the Statutory Liquidator's Exceptions to the July 9, 2021 Order and Opinion of the Court in the above-captioned matter are OVERRULED.

_____
MARY HANNAH LEAVITT, President Judge Emerita